J-A25008-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID AND ELIZABETH SPENCER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EUGENE C. MILLER, JR. | : | |
| | : | |
| Appellant | : | No. 91 MDA 2020 |

Appeal from the Judgment Entered March 12, 2020
In the Court of Common Pleas of Tioga County
Civil Division at No(s):  0824-CV-2018

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:                **FILED: JANUARY 14, 2021**

Eugene C. Miller, Jr. appeals from the judgment entered against him and in favor of David and Elisabeth Spencer (collectively "the Spencers") in this action on a note secured by a mortgage.  We affirm.

We gather the following facts from the trial court's opinion and the certified record.  The Spencers owned real estate in Tioga County, Pennsylvania.  They agreed to sell the property to Mr. Miller, while they retained a life estate and continued to reside on the premises.  Accordingly, the Spencers conveyed the property to Mr. Miller in exchange for a $90,000 note, secured by a mortgage providing for five annual installment payments of the principal plus interest.  The security instrument also contained covenants regarding, *inter alia*, the payment of real estate taxes and insurance premiums.

Mr. Miller made several payments in accordance with the instruments, but ultimately defaulted. The Spencers filed a complaint seeking to collect the balance due on the note as well as unpaid real estate taxes and hazard insurance premiums. After preliminary objections were sustained and an amended complaint filed, Mr. Miller filed an answer and new matter in which he admitted that he defaulted on the payments. However, Mr. Miller denied that he was responsible for the taxes and insurance premiums, and he claimed that he was entitled to credits for value he conferred upon the Spencers, namely a $600 well repair, a cow worth $1,300, and a $5,000 cash payment. The Spencers filed a reply admitting that Mr. Miller was entitled to a $1,300 credit for the cow, but denied that he was entitled to the remaining $5,600 credit claimed.

The case proceeded to a bench trial at which the only disputed issues were whether Mr. Miller was responsible for the tax and insurance payments and whether Mr. Miller was entitled to credits for the cash payment and well repair. Mr. Miller testified that he only purchased the property from the Spencers to help them out, as he had money at the time and the Spencers had helped him with his daughter. Mr. Miller stated that Mr. Spencer indicated his plan to retire from operating a commercial garage on the property, and Mr. Miller would be able to use it after another summer while the Spencers lived in the property's house. Mr. Miller contended that they agreed that the Spencers would take care of the maintenance on the property while they lived

there, and that he provided Mr. Spencer with $5,000 in cash, at Mr. Spencer's request, because he needed money. Mr. Miller further indicated that he paid the tax bill once after Mr. Spencer refused, but declined to continue doing so when Mr. Spencer failed to vacate the garage as promised. Mr. Miller also paid the $600 well repair bill that the Spencers had sent to him because Mr. Miller regularly did business with the repairman and did not want "to stiff him on it." However, Mr. Miller had no evidence to corroborate these payments. *See* N.T. Trial, 9/11/19, at 17-23, 28.

Mr. Spencer testified that Mr. Miller is the one who approached him about buying the property, not the other way around, and that he never received cash from Mr. Miller. *See id*. at 6-8. The Spencers offered the written agreements to demonstrate that Mr. Miller had been responsible for maintaining the property, including taxes and insurance premiums, as well as documentary evidence of the amounts they expended as a result of Mr. Miller's failure to do so. *See id*. at Exhibits P-1—P-8.

Following the parties' filing of post-trial memoranda, the trial court issued findings of fact and an opinion concluding that the Spencers were entitled to judgment in the amount of $64,267.20, which is the sum of Mr. Miller's missed payments on the note plus interest and late charges, the real estate taxes and late fees paid by the Spencers, and the insurance premiums paid by the Spencers, less the credit for the cow. *See* Findings of Fact,

Discussion and Opinion, 10/9/19, at 4. The prothonotary entered judgment on the verdict on October 11, 2019.

Mr. Miller filed a timely, succinct post-trial motion seeking reduction of the verdict by the $5,000 cash payment plus interest, as well as the removal of the amounts the Spencers paid for taxes and insurance. *See* Post-Trial Motion, 10/17/19. The post-trial motion does not reference the $600 well repair payment. Mr. Miller also filed a praecipe to rescind the judgment while the post-trial motion was pending. The trial court denied Mr. Miller's motion by order entered December 19, 2019.

Mr. Miller filed a notice of appeal on January 17, 2020. Both Mr. Miller and the trial court complied with Pa.R.A.P. 1925. Noting the absence of a final judgment on the docket, this Court directed its entry. Mr. Miller complied, the parties have filed their briefs, and the appeal is ripe for our disposition.

Mr. Miller presents the following questions for this Court's consideration:

1. W[ere the Spencers], not [Mr. Miller], responsible for the costs of real estate taxes and hazard insurance?

2. Should $600.00 of credit have been applied for [Mr. Miller]'s water well repair?

3. Should the $5000.00 cash payment alleged by [Mr. Miller] and supported by objective evidence have been credited?

Mr. Miller's brief at v.

We begin with a review of the applicable law.

Our standard of review in non-jury cases is limited to: a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court

- 4 -

committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

**Landis v. Wilt**, 222 A.3d 28, 34 (Pa.Super. 2019) (citation and internal quotation marks omitted). However, "for questions of law, an appellate court's standard of review is *de novo* and its scope of review is plenary." **Dolan v. Hurd Millwork Co., Inc.**, 195 A.3d 169, 176 (Pa. 2018).

Mr. Miller's first question is whether, pursuant to the terms of the parties' agreements, the Spencers were responsible for the payment of real estate taxes and insurance premiums. Accordingly, we review the language of the instruments in question, as the terms of the parties' contract are set by "the plain terms of their written agreement." **Nicholas v. Hofmann**, 158 A.3d 675, 693 (Pa.Super. 2017).

The note identifies Mr. Miller as the Borrower and the Spencers collectively as the Lender, sets forth the borrowed amount and terms of repayment, and provides that it is secured by a mortgage. **See** Plaintiffs' Exhibit P-7. The recorded mortgage instrument provides the same identifications of the Borrower and Lender and reiterates the payment schedule and terms. **See** Plaintiffs' Exhibit P-8. The mortgage also provides a legal description of the mortgaged real estate, excepting and reserving, *inter alia*,

unto the Grantors herein a life estate in the above described premises. Said life estate to expire at the death of the second Grantor herein. Said life estate shall expressly terminate sooner if the grantors herein do not continue to reside in said premises as their primary residence, **Grantors herein shall be responsible for any and all maintenance and repair costs and upkeep of said premises as long as they retain possession of the premises**.

Plaintiffs' Exhibit P-8 at unnumbered 3 (emphasis added).

Attached to the mortgage is a list of uniform covenants to which the parties agreed. Among them are the following provisions pertinent to this appeal:

3. Charges; Liens. **Borrower shall promptly pay all real estate taxes**, **and pay or arrange to be paid by Life Tenant assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument**, and leasehold payments or ground rents, if any. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Upon request by Lender, Borrower shall promptly furnish to Lender receipts evidencing the payments.

. . . .

4. Hazard Insurance. **Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss** by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in an amount sufficient to fully protect Lender's security. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. **This insurance may be required to be reimbursed to the Borrower by the Lender/Life Tenant, according to the life estate terms**.

5. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste.

- 6 -

*Id*. at unnumbered 4 (emphases added).

Mr. Miller argues that, in light of the circumstances giving rise to the agreements, namely, his version of the story in which he had no interest in the real estate but decided to help the Spencers out because they had helped him with his daughter, "[o]f course [Mr. Miller] expected [the Spencers] to insure and pay taxes on the home they still were going to possess and own for life." Mr. Miller's brief at 6 (emphasis omitted). He contends that the Spencers' position is disingenuous and contrary to the "somewhat contradictory terms" of the writings. *Id*.

Mr. Miller asserts that the proper interpretation of the above-quoted provisions is that the term of the life estate included in the mortgage making the Spencers responsible for maintenance, repair, and upkeep of the property activated the hazard insurance covenant provision that costs of insurance "may be required to be reimbursed to the Borrower by the Lender/Life Tenant, according to the life estate terms." *Id*. He further maintains that, because real estate taxes are assessments that may take priority over a mortgage, the Spencers were required to pay them under the terms of the charges/liens covenant. *Id*.

We disagree completely. First, we view the evidence as to the factual circumstances of the parties' agreement in the light most favorable to the Spencers, as they prevailed at trial. *See Landis*, *supra* at 34. Second, we discern no ambiguities or contradictions in the terms of the writings. "When

the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself." **Nicholas**, **supra** at 693.

The provision concerning charges and liens expressly places the burden of promptly paying real estate taxes on Mr. Miller, the Borrower, **and also** requires him to pay other assessments unless he arranges for them to be paid by the Spencers as Life Tenants. **See** Plaintiffs' Exhibit P-8 at ¶ 3 of unnumbered 4. "Borrower shall promptly pay all real estate taxes, and pay or arrange to be paid by Life Tenant assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument[.]"). Mr. Miller failed to pay nearly $9,000 in real estate taxes, and offered no evidence that he made arrangements with the Spencers for them to pay any penalties associated with the delinquency. Accordingly, the trial court properly held that the Spencers were entitled to recover the $10,651.58 they expended in satisfying Mr. Miller's tax obligation.

Likewise, the hazard insurance covenant clearly required Mr. Miller to "keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender requires insurance." **Id**. at ¶ 4 of unnumbered 4. It also stated that such "insurance may be required to be reimbursed to the Borrower by the Lender/Life Tenant, according to the life estate terms." **Id**. The terms of the life estate specified in the mortgage contain no provision regarding reimbursement for hazard insurance. The only

obligation imposed upon the Spencers is to take care of "any and all maintenance and repair costs and upkeep of said premises as long as they retain possession of the premises." Plaintiffs' Exhibit P-8 at unnumbered 3. Since there is a covenant concerning "preservation and maintenance" of the property separate and distinct from that governing insurance, it is clear that the parties did not intend hazard insurance premiums to fall under the umbrella of maintenance costs. Therefore, the trial court correctly held that Mr. Miller was required to reimburse the Spencers for the $350.70 they paid for insurance.

Having concluded that Mr. Miller's first issue merits no relief, we turn to his remaining arguments, both of which challenge the trial court's failure to find that he was entitled to credit for payments made to or on behalf of the Spencers when calculating the Spencers' damages. Specifically, Mr. Miller contends that he should have received a $600 credit for the well repair bill he satisfied because the trial court concluded that the repair had been made and determined that the maintenance cost was the Spencers' responsibility, and Mr. Miller testified that the bill was $600, though he had no documentation to corroborate the amount. *See* Mr. Miller's brief at 6-7. Mr. Miller further asserts that the trial court abused its discretion in rejecting Mr. Miller's testimony that he handed Mr. Spencer $5,000 in cash, arguing as follows:

> [Mr. Miller] was very specific in testifying about [Mr.] Spencer needing [a] cash injection, but not wanting his wife to know, about their relationship that prompted [Mr. Miler] to honor that request, about the time frame, and about the exact location

where he handed it to Appellee. The only denial from [Mr. Spencer] was when he was asked the leading question "And you never received any cash payments?" he answered "I never seen any."

The **objective** evidence which should have in every case sufficiently supported [Mr. Miller's] statement that he had made the $5000.00 cash payment is the fact that the 2014 [mortgage] payment, accepted without complaint by [the Spencers], was $16,375 rather than the scheduled 21,375.00. No claim was made for this $5000.00 [Mr. Spencer] now appears to deny until 4½ years later, with the filing of Complaint. . . .

Apparently [Mr.] Spencer still does not want his wife to know.

*Id*. at 7-8 (citations omitted; emphasis in original).

Our review of these claims is guided by the following principles. "The duty of assessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence." ***Epstein v. Saul Ewing***, 7 A.3d 303, 315 (Pa.Super. 2010) (internal quotation marks omitted). In determining the amount due, the fact finder "is free to accept all, part, or none of the evidence." *Id*. at 314. Furthermore, "[i]ssues not preserved in a post-trial motion are waived," and, thus, unreviewable by this Court. ***Garwood v. Ameriprise Fin., Inc.***, 240 A.3d 945, 948 (Pa.Super. 2020) (cleaned up).

As noted above, Mr. Miller made neither explicit nor implicit reference to the $600 well repair payment in his post-trial motion. His one-sentence motion was, in its entirety, as follows: "[Mr. Miller] moves for post-trial relief

on crediting him with $5000.00 previously paid, plus reduction of interest, plus removal of the taxes and insurance paid by [the Spencers] from the judgment, for the reasons testified to at trial and described in his Post-Trial Memorandum." Post-Trial Motion, 10/17/19. Accordingly, Mr. Miller's claim related to the well repair is waived. *See Garwood*, *supra* at 948.

Regarding the alleged $5,000 cash payment, the trial court expressly found Mr. Miller's testimony to be incredible. *See* Findings of Fact, Discussion and Opinion, 10/9/19, at 3 ("Addressing the claim for a credit for cash payment, the [c]ourt does not find credible the claim that the funds were actually paid to [Mr. Spencer].").  The Spencers note that the trial court's credibility determination is supported by Mr. Spencer's denial, namely by "[Mr. Miller's] admission that all of his prior payments were made via check and [Mr. Spencer's] testimony that he never received any cash payments." The Spencers' brief at 9 (citations omitted).

Viewing the record in the light most favorable to the Spencers and rejecting all inferences unfavorable to them, as we must, we cannot conclude that the trial court's determination that Mr. Miller was not entitled to a credit for $5,000 constituted an abuse of discretion. *See Landis*, *supra* at 34. Consequently, we have no grounds to disturb the factual findings of the trial court.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/14/2021