J-A13002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RICHARD WALLACE, LISA WALLACE, THOMAS BORNER, JANICE WHITING, AND COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIROMENTAL PROTECTION | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| KELDON HOLDINGS, LLC AND TODD JOSEPH PROPERTIES, LLC | : : : | |
| Appellant | : : | No. 1347 WDA 2024 |

Appeal from the Order Entered October 23, 2024
In the Court of Common Pleas of Crawford County
Civil Division at No(s):  AD-2024-623

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:  **FILED:  September 9, 2025**

Keldon Holdings, LLC, and Todd Joseph Properties, LLC, (collectively "Defendants") appeal from the order granting a preliminary injunction in favor of appellees Richard and Lisa Wallace, Thomas Borner, and Janice Whiting (collectively "Plaintiffs").[1]  Concluding that the trial court lacked subject matter jurisdiction over the action, we vacate and remand with instructions.

We offer the following summary of the relevant background, which we have gleaned from the certified record.  Since the 1970s, Plaintiffs and their

---

[1] The Commonwealth Department of Environmental Protection submitted a letter to this Court advising of its non-participation in this appeal, as its appearance in the matter, which was to seek quashal of a subpoena, is not pertinent to the issues before us.  *See* Notice of No Interest, 2/11/25.

predecessors owned properties within Conneaut Lake Park, a once-thriving amusement park that Defendants purchased out of bankruptcy proceedings in 2021.[2] The real estate in question was part of the Exposition Park plan for developing the land that was recorded in 1911. Plaintiffs' vacation homes are along what the plan designated as Center Street, a forty-foot-wide roadway that was to run roughly parallel to Lake Front Street, which followed the shore of Conneaut Lake. There is no indication that the portion of Center Street in front of Plaintiffs' properties ("Disputed Area") was ever opened as a road. Ultimately, Center Street, along with many thoroughfares that had been opened within the park, were formally vacated as public streets in 1990 by Sudsbury and Summit Townships, the boundary line of which Center Street straddles. The ordinances provided that the roads were to remain private roads.

In front of Plaintiffs' properties runs a sidewalk used by guests of the Hotel Conneaut to travel through the park. The portion of Center Street beyond the paved sidewalk remained a grassy area which Plaintiffs and their predecessors each used for decades as front yards. The part of the Disputed Area abutting the Wallaces' property was bounded for approximately thirty years by a large, raised wooden deck where Defendants' predecessors held

---

[2] Originally, Plaintiffs' properties were leased from the park for terms of either ninety-nine or 999 years. However, the lessees paid no rent and were taxed as owners. Plaintiffs ultimately received quitclaim deeds from Defendants' predecessor in 2018.

outdoor concerts and other events. This deck served as a fence for the Wallaces and thwarted the passage of vehicular traffic on Center Street. The Borners placed painted cinder blocks along the other end of the Disputed Area to prevent event attendees from parking on the lawn. Closed off as it was, Plaintiffs planted vegetation in the Disputed Area, populated it with picnic tables and a fire pit, and maintained it as a yard by mowing the grass and raking leaves.

Purely as a visual aid, we have created the following diagrams, which are: (1) the revised Exposition Park plan, and (2) a heavily-edited section thereof depicting the area at issue:



Complaint, 9/27/24, at Exhibit G (labels, shading, and approximate location of the deck added, extraneous detail removed from second image).

We also offer photographs of the Disputed Area depicting it: (1) as it was when the deck was in place, which was until Defendants removed it in approximately 2020, and (2) as it appeared shortly before the events giving rise to this litigation:

 

N.T. Hearing, 10/2/24, at Exhibits P, X.

In the summer of 2024, Defendants prepared to build a road along Center Street, digging up a tree and other vegetation. Informed that construction of the road across the Disputed Area was imminent, Plaintiffs initiated this action on September 27, 2024. Plaintiffs sought a declaratory judgment that each had acquired title to the portions of Center Street abutting their properties through adverse possession or, in the alternative, that they had an easement over the full forty-foot width of the Disputed Area in front of their respective lots. Plaintiffs requested preliminary and permanent injunctions to halt the construction and enjoin installation of a roadway over the paper street.

The trial court held hearings on the preliminary injunction on October 2, and 21, 2024, at which Plaintiffs and Defendants appeared and presented evidence. The focus of the hearings was Plaintiffs' likelihood of success on the merits of their underlying claims of ownership of the Disputed Area, with the parties exploring how it was utilized by Plaintiffs and others over the years. Plaintiffs also proffered testimony and exhibits concerning the actions Defendants had taken more recently to alter the greensward nature of the Disputed Area.

In between the two hearings, Defendants filed their answer and new matter and moved for partial judgment on the pleadings.[3] The primary argument forwarded by Defendants in their filings and at the hearings was that Plaintiffs were unable to establish adverse possession of the Disputed Area because they admitted in their complaint that they had an easement to use Center Street, rending their possession of the land permissive rather than hostile. In a supplemental brief filed after the hearings had concluded,

_____

[3] In their new matter, Defendants averred that the improvement of the Disputed Area was being undertaken to improve access of emergency vehicles to Hotel Conneaut and attached a copy of an email from the Conneaut Lake Fire Chief to that effect. *See* Answer and New Matter, 10/4/24, at 17 and Exhibit F. Following oral argument before this Court, Defendant filed an application to submit a letter to this panel reiterating that information. Since the information is in the certified record before us, we deny the application as moot. We further observe that, at the close of the second day of the preliminary injunction hearing, the trial court expressly noted that Defendants had failed to proffer any evidence that construction of the road was necessary for emergency vehicles. *See* N.T. Hearing, 10/21/24, at 122.

Defendants cited case law supporting an argument that Plaintiffs' use of the Disputed Area as a yard was insufficient to extinguish the easement that Defendants enjoyed to utilize Center Street for ingress and egress.

The trial court was unpersuaded by Defendants' arguments. It concluded that Plaintiffs had proven all requisites for the issuance of a preliminary injunction, including a likelihood to succeed on the merits of their claims.[4]  Accordingly, the court issued a preliminary injunction that not only required Defendants "to cease and refrain from any construction or installation of a roadway" on the Disputed Area pending resolution of the case, but further provided:  "Plaintiffs have the authority to exercise control over the [Disputed Area] to the exclusion of the Defendants and all others."  Order, 10/23/24.

This timely appeal followed.[5]  Defendant and the trial court complied with their respective Pa.R.A.P. 1925 obligations.  Defendants present the following questions for our consideration:

1. Whether the trial court erred in holding that [Plaintiffs'] use of Center Street was "inconsistent" with their implied

_____

[4] Indeed, the court noted its belief that it had heard enough evidence to garner "a full appreciation of the nature of the dispute" such that receipt of evidence at trial was "unlikely to make a considerable difference in [its] evaluation of Plaintiffs' claim of adverse possession[.]"  Memorandum, 10/23/24, at 6.

[5] Defendants assert that this Court has jurisdiction pursuant to 42 Pa.C.S. § 742 as an appeal from a final order.  **See** Defendants' brief at 7.  Plainly, the court's order granting Plaintiffs' request for a preliminary injunction is not a final order, as it is a temporary measure effective "pending final litigation of the case[.]"  Order, 10/23/24.  However, we discern that we have jurisdiction under Pa.R.A.P. 311(a)(4), which provides for an immediate appeal as of right from an interlocutory order granting an injunction.

easement, and in failing to hold that [Plaintiffs'] implied easement to use the right-of-way formerly known as Center Street created a permissive use which precluded them from establishing the element of hostility necessary to succeed on their adverse possession claim.

2.  Whether the trial court erred in concluding that [Plaintiffs'] recreational use of the right-of-way formerly known as Center Street is inconsistent with an easement for ingress and egress over Center Street.

3.  Whether the trial court erred in concluding there was sufficient evidence in the record to establish the element of exclusivity in [Plaintiffs'] use of the right-of-way formerly known as Center Street.

4.  Whether the trial court erred in failing to hold that even if [Plaintiffs] acquired title to the right-of-way formerly known as Center Street by adverse possession, [Defendants] would continue to have a right to access, traverse, and improve the adversely possessed right-of-way via its own implied easement because it is an adjacent property owner to that right-of-way, and therefore, [Plaintiffs] failed to prove a clear right to relief.

Defendants' brief at 9 (cleaned up).

We begin our examination of Defendants' issues with a review of the applicable legal principles. Our standard of review of a preliminary injunction is "highly deferential." *Duquesne Light Co. v. Longue Vue Club*, 63 A.3d 270, 275 (Pa.Super. 2013). In assessing a trial court's ruling on a request for a preliminary injunction, "we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *City of Allentown v. Lehigh Cty. Auth.*, 222 A.3d 1152, 1156 (Pa.Super. 2019) (cleaned up). "Only if it is plain that no grounds exist to support the decree or that the rule

- 7 -

of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court." *Id*. (cleaned up).

A preliminary injunction's purpose "is to preserve the status quo as it exists or previously existed before the acts complained of, thereby preventing irreparable injury or gross injustice." *Id*. (cleaned up). A party seeking a preliminary injunction must establish each of the following prerequisites:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pennsylvania v. Commonwealth*, 104 A.3d 495, 502 (Pa. 2014).

As noted, the focus in this case has been on the fourth prong. In that vein, our High Court has explained: "To establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *Id*. at 506.

This Court has offered the following comprehensive summary of the law governing the substantive claims Plaintiffs raise in their complaint:

An action to quiet title is designed to resolve a dispute over the title to real estate of which the plaintiff is in possession. The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title. It has long been the law in Pennsylvania that where the side of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of it, if the grantor had title to that extent, and did not expressly or by clear implication reserve it. It is also well-settled that, where an owner of land subdivides it into lots and streets on a plan and sells his lots accordingly, there is an implied grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of them to public use.

In 1889, in an effort to relieve land upon which streets have been laid out by the owners, but not used, from the servitude imposed, legislation was enacted to limit the time in which a paper road must be opened to retain its nature as a public thoroughfare. The statute, codified at 36 P.S. § 1961, provides as follows:

> Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out.

However, there is a clear distinction between the public right of passage over dedicated streets and the individual rights of property owners involved in such dedication. As the consideration paid for the lots included the increased value imparted by the access to the land promised by the laid-out streets and alleys, while the public easement or right of use in such lanes or alleys is lost as the result of the passage of such time and lack of use, the purely private rights of easement of individual property owners in the plan of lots to use the alley or way are not extinguished.

Although the resulting right of way over the plan's streets and alleys is an easement by implication rather than an express easement, the usual criteria for establishment of an implied easement do not apply to an easement by reference to a map or plate, which is a particular type of implied easement controlled by

- 9 -

its own principles. References to a plan contained in deeds make the plan a part of the deed or conveyance and constitute a dedication of the streets, alleys and ways shown on the plan, to the use of the purchasers as public ways. Moreover**, the rights of a non-abutting property owner within the plan are no less than those of a property owner abutting upon the street in question**. The non-abutting property owner's rights in the street grid of the plan are not limited to those streets which are necessary to the enjoyment of his property or which materially benefit or add to its value.

The owner of the land abutting the unopened road has the right to make use of his property as he chooses, if, by so doing, he does not substantially interfere with the easement. If the landowners abutting the unopened road interfere with the easement to the extent that the elements of adverse possession are satisfied, the owners may extinguish the private easement over their half of the unopened road. To extinguish an easement over (or use of) the servient tenements, the servient tenement owner must demonstrate a visible, notorious and continuous adverse and hostile use of said land which is inconsistent with the use made and rights held by the easement holder, not merely possession which is inconsistent with another's claim of title.

*Landis v. Wilt*, 222 A.3d 28, 34–35 (Pa.Super. 2019) (cleaned up, emphasis added).

With this in mind, we turn to Plaintiffs' claims in the instant action. Their complaint stated alternative claims of quiet title and declaratory judgment, seeking to establish their exclusive right to use the Disputed Area as a lawn and to preclude Defendants from trespassing or installing a roadway thereupon, or from routing traffic over the paper street. They state their position regarding the above-cited law is as follows: "when Center Street was vacated in 1990, [Plaintiffs] took title to the western [twenty] feet of Center Street and an easement over the eastern [twenty] feet, while the Defendants

and their predecessors in title took title to the eastern [twenty] feet and an easement over the western [twenty] feet." Plaintiffs' brief at 14 n.2. Plaintiffs maintain that they thereafter adversely possessed Defendants' eastern half of the Disputed Area such that Defendants no longer have any rights to it.

Plaintiffs' position overlooks the fact that after the failure to open, or vacation of, a public roadway within a recorded plan, "the rights of a non-abutting property owner within the plan are no less than those of a property owner abutting upon the street in question" to use the paper street for ingress and egress. ***See Landis***, 222 A.3d at 35 (cleaned up). Hence, the trial court's ruling in this matter implicates not only the respective rights of Plaintiffs and Defendants, but those of any and all property owners within the original plain.

The certified record reveals that such property owners exist. Plaintiffs referenced the recorded Exposition Park plan in their complaint and noted that they were merely among the people within the park who had leases that amounted to ownership. ***See*** Complaint, 9/27/24, at ¶¶ 10-12. Plaintiffs further proffered the deed through which Defendants acquired their real estate, evincing numerous other properties within the plan owned by people other than Plaintiffs and Defendants. ***See*** N.T. Hearing, 10/21/24, at Exhibit HH (map attached as Exhibit B to deed). Plaintiffs' evidence additionally included correspondence from Defendants' land surveyor, Mark E. Galbo. This document advised Plaintiffs of Defendants' position that Defendants and every other landowner within the original plan had the legal right to utilize the Center

Street right-of-way. *Id*. at Exhibit II. Thus, the certified record plainly suggests that there are property owners other than Plaintiffs and Defendants whose rights are being adjudicated in this matter.

Yet, Plaintiffs sued only Defendants in this action. There is no indication that Plaintiffs put any other Exposition Park property owners on notice that they were seeking to extinguish all rights to the Center Street easement. Nor does it appear from the certified record that said owners were given the opportunity to be heard on the matter. Nonetheless, the trial court entered an order not only prohibiting Defendants from improving the Center Street easement, but also providing that "Plaintiffs have the authority to exercise control over the [Disputed Area] to the exclusion of the Defendants **and all others**." Order, 10/23/24 (emphasis added).

The Declaratory Judgment Act states that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." 42 Pa.C.S. § 7540(a). This Court has also held, in an action to quiet title, that everyone with an interest in the property in dispute is a necessary party. *See Turner v. Estate of Baird*, 270 A.3d 556, 562 (Pa.Super. 2022).

It is well-settled that "[f]ailure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised *sua sponte*." *Orman v. Mortgage I.T.*, 118 A.3d 403, 406 (Pa.Super. 2015)

(cleaned up). *See also N. Forests II, Inc. v. Keta Realty Co.*, 130 A.3d 19, 29 (Pa.Super. 2015) (addressing failure to join indispensable parties despite fact that trial court did not "because of its jurisdictional nature"). "Unless all indispensable parties are made parties to an action, a court is powerless to grant relief." *Unruh Turner Burke & Frees, PC v. Tattersall Dev. Co.*, 283 A.3d 1265, 1271 (Pa.Super. 2022) (cleaned up).

We have identified the considerations for determining if parties are indispensable as follows:

1. Do absent parties have a right or an interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Turner*, 270 A.3d at 561 (cleaned up).

Our above recitation identifies absent parties whose rights to use Center Street are inextricably intertwined with the merits of Plaintiffs' claims such that justice cannot be done without violating their due process rights. *Accord Kinney v. Lacey*, 252 A.3d 644, 649 (Pa.Super. 2021) (holding that lot owners whose easement rights would be adversely affected by a decision in favor of other lot owners' favor on claim of adverse possession were indispensable parties whose absence deprived the trial court of jurisdiction to enter rulings in the case); *N. Forests II*, 130 A.3d at 29 (finding that parties

- 13 -

whose rights stood to be divested by quiet title plaintiffs "obviously were indispensable parties" whose absence required judgment to be stricken).

While it is unfortunate that resources of the parties and the court have been expended futilely, "the parties cannot, by the collective failure to identify an interested third party, deprive the third party of its right without notice." *Turner*, 270 A.3d at 562-63. Despite the belated recognition of the deficiency, it is undoubtedly better to identify the issue at this juncture "rather proceed through the time and expense of trial only to learn at a later stage that the trial court lacked jurisdiction all along." *Id*. at 562.

For now, the proper disposition of this appeal is to vacate the court's order granting Plaintiffs' request for a preliminary injunction and remand for the court to issue an order directing Plaintiffs to join the indispensable parties pursuant to Pa.R.Civ.P. 1032(b) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that . . . the indispensable party be joined, but if that is not possible, then it shall dismiss the action.").

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 9/9/2025