J-A21017-22

2022 PA Super 168

| | | |
|---|---|---|
| UNRUH TURNER BURKE AND FREES, PC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TATTERSALL DEVELOPMENT COMPANY T/A TATTERSALL PROPERTIES LP KENNETH C. HELLINGS AND JOYCE M. HELLINGS | : | No. 555 EDA 2022 |
| | : | |
| APPEAL OF: KENNETH C. HELLINGS AND JOYCE M. HELLINGS | : | |

Appeal from the Order Entered January 11, 2022
In the Court of Common Pleas of Chester County
Civil Division at 2012-04079-CT

BEFORE:  LAZARUS, J., MURRAY, J., and McCAFFERY, J.

OPINION BY MURRAY, J.:                    **FILED SEPTEMBER 30, 2022**

Kenneth C. Hellings (Mr. Hellings) and Joyce M. Hellings (collectively, Appellants) appeal from order denying their motion to dissolve the preliminary injunction granted at the request of Appellee Unruh Turner Burke & Frees, P.C. (UTBF).  UTBF had obtained a judgment against Appellants, and the trial court's preliminary injunction enjoined Appellants from transferring funds through four entities: Capstone5 LP (Capstone); Embreeville Redevelopment GP, LLC (Embreeville GP); Embreeville Redevelopment, LP (Embreeville LP); and KCH, LLC  (KCH) (collectively, the Embreeville Entities)) to avoid payment of the judgment.  We affirm.

The trial court summarized the procedural history as follows:

> This collection case was initiated in 2012. In 2015, [the trial court] entered judgment against the [Appellants] and the Tattersall Development Company ("Judgment Debtors")[,] and in favor of UTBF in the amount of $131,494.74, plus interest … ("Judgment").[FN1]

> ---

> [FN1] The Judgment increased to $241,950.32 as of December 1, 2021 due to interest and continues to grow by $43.23 daily.

> ---

> On June 22, 2018, UTBF petitioned for a charging order alleging that Judgment Debtors had avoided enforcement of the Judgment by refusing to appear for depositions, refusing to disclose assets, refusing to disclose the location of the [Appellants'] residence, and using various shell entities to hold legal title to property for their personal benefit to shield those assets from the Judgment. The Judgment Debtors failed to answer the petition. On August 6, 2018, UTBF was granted relief and a charging order [(Charging Order)] was entered directed to various [of Appellants'] controlled entities, including KCH. The full list of entities subject to the Charging Order were described over two pages of the Charging Order and are referenced herein as the "2018 Charging Order Entities." Pursuant to the Charging Order, the 2018 Charging Order Entities were to pay UTBF all sums due from any of the 2018 Charging Order Entities to any of the Judgment Debtors.

> More recently, on October 12, 2021, UTBF filed an Emergency Petition for Special Injunction ("Emergency Petition") seeking relief under Pa.R.C.P. No. 3118(a)(6). UTBF had become of aware of a purported scheme to shield $22,500,000 in proceeds from the sale of a real property in West Bradford Township from UTBF's efforts to collect its Judgment. (Emergency Petition, ¶ 6) [The trial court] granted *ex parte* relief in the form of an Order that:

>> 1.) amended the Charging Order to include Capstone in the list of entities subject to the Charging Order, and

>> 2.) directed Embreeville GP and Embreeville LP to pay into court all sums due[,] from either[,] to any of the following:

the Judgment Debtors, KCH, Capstone, any assignee of KCH's interest in Embreeville GP or Capstone, any assignee of Capstone's interest in Embreeville LP, and any other entity owned by the Judgment Debtors, KCH or Capstone.

In addition, the October 12, 2021 Order set the matter for a hearing on October 15, 2021. The Judgment Debtors have not answered the petition.

On October 15, 2021, the parties agreed to continue the hearing and stipulated to entry of an order maintaining the injunction until such time as a final hearing could be held. Despite agreeing to maintain the injunction until a final hearing, on November 24, 2021, [Appellants] filed a motion to dissolve the preliminary injunction.[FN2] UTBF answered and briefed the motion.[FN3] The motion was denied on January 11, 2022. [Appellants] thereafter timely filed this appeal and, in response to an order so directing, timely filed a statement of matters complained of on appeal.

---

[FN2] Pa.R.C.P. No. 1531 (c) provides "[a]ny party may move at any time to dissolve an injunction."

[FN3] Judgment Debtors failed to brief their motion as required by Local Rule 208.3(b).

Trial Court Opinion, 4/4/22, at 1-3 (footnotes in original).

In this appeal, Appellants present the following claims for our review:

1. Did the trial court err in denying [Appellants'] Motion to Dissolve the Preliminary Injunction as to [the Embreeville Entities] … as the entities were never served with the Emergency Petition for Special Injunction (hereinafter "Underlying Petition") thus depriving the trial court of jurisdiction?

2. Did the trial court err in denying Appellants' Motion to dissolve the preliminary injunction as [UTBF] … failed to name the Embreeville Entities, who are indispensable parties to the Underlying Litigation, depriving the trial court of jurisdiction?

- 3 -

3. Did the trial court err in failing to dissolve the preliminary injunction[] as the property at issue does not belong to Appellants, but rather, it belongs to the Embreeville Entities, which are not parties to this proceeding, and a [c]ourt cannot make determinations as to the conflicting rights to property held by third parties based on the limited purposes of Pennsylvania Rule of civil Procedure 3118?

4. Did the trial court err in failing to dissolve the preliminary injunction as "reverse piercing of the corporate veil" related to a non-debtor third party, not a party to the litigation, is improper relief under Pennsylvania Civil Procedure 3118?

Appellants' Brief at 5 (some capitalization omitted).

In reviewing the grant of a preliminary injunction,

we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [court].

***Allegheny Anesthesiology Associates, Inc. v. Allegheny General Hosp.***, 826 A.2d 886, 891 (Pa. Super. 2003).

To obtain a preliminary injunction, a petitioner must establish that:

(1) relief is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by money damages; (2) greater injury will occur from refusing to grant the injunction than from granting it; (3) the injunction will restore the parties to their status quo as it existed before the alleged wrongful conduct; (4) the petitioner is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and (6) the public interest will not be harmed if the injunction is granted.

***Shepherd v. Pittsburgh Glass Works, LLC***, 25 A.3d 1233, 1241 (Pa. Super. 2011).

A mandatory preliminary injunction, such as the one imposed here, is designed to restore the status quo to the "last actual, peaceable [and] noncontested status which preceded the pending controversy." *Commonwealth v. Coward*, 414 A.2d 91, 99 (Pa. 1980) (citation omitted). It "should be issued only in rare cases and certainly more sparingly than one which is merely prohibitory." *Roberts v. School Board of the City of Scranton*, 341 A.2d 475, 478 (Pa. 1975).

In their first issue, Appellants challenge the trial court's jurisdiction to enter a preliminary injunction involving the Embreeville Entities, as UTBF never served the Embreeville Entities with its preliminary injunction petition. Appellants' Brief at 11. Appellants argue UTBF failed to comply with Pennsylvania Rules of Civil Procedure 3118(a) and 440. *Id.* at 11, 13. Appellants acknowledge UTBF served their own "undersigned counsel" with a copy of the petition. *Id.* However, Appellants claim their counsel does not represent the Embreeville Entities:

> [T]here is no evidence that counsel for Appellants was authorized to accept service on the Embreeville Entities' behalf. There is no provision in either Pa.R.C.P. 3118(a) or 440 that even allows for service in such a manner.

*Id.* Appellants dispute the trial court's finding that:

> Because the allegations and supporting documentation that [Appellants] and Embreeville Entities are one in the same and [Appellants] have been served and are participating in the proceedings, there is no issue.

- 5 -

*Id.* (citing Trial Court Opinion, 4/4/22, at 10). According to Appellants, there is no presumption as to the validity of service upon the Embreeville Entities. *Id.* at 15. In the absence of valid service, Appellants maintain the trial court lacked jurisdiction over the Embreeville Entities. *Id.* Appellants thus claim the trial court erred in not dissolving the preliminary injunction. *Id.* at 15-16.

UTBF responds that they served the preliminary injunction petition on Robert Burke, Esquire (Attorney Burke), counsel for each of the Embreeville Entities. Appellee's Brief at 13. UTBF observes the Embreeville Entities

> had the right to file a response to the Petition and chose not to. **Moreover, [UTBF] is not seeking to attach property of [the Embreeville Entities].**

*Id.* (emphasis added).

Notably, Appellants, not the Embreeville Entities, challenge the lack of service on the Embreeville Entities.[1] This Court is unable to discern how Appellants, in their individual capacities, are prejudiced by the lack of service upon the Embreeville Entities.

In ***McCreesh v. City of Philadelphia***, 888 A.2d 664, 674 (Pa. 2005), our Supreme Court stated that when a defendant has actual notice of an action, dismissal for lack of service will be appropriate "where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant."

---

[1] Appellants make no claim they are acting in a derivative capacity.

In other words, "a plaintiff will not be punished for technical missteps if he has satisfied the statute of limitations by supplying a defendant with actual notice." *Id.* at 672.

Here, Appellants offer no basis upon which to conclude UTBF attempted to "stall the judicial machinery." *See id.* More significant, we discern no prejudice to **Appellant's interests**, caused by an alleged lack of service upon the Embreeville Entities. Any harm caused by lack of service would inure to the Embreeville Entities, who have not lodged any objection. Because Appellants failed to establish prejudice caused by the lack of service, they are owed no relief. *See* Pa.R.A.P. 501.

In their second issue, Appellants argue the trial court erred when it determined the Embreeville Entitles need not be joined as indispensable parties. Appellants' Brief at 16. Appellants claim the failure to join the Embreeville Entities deprived the trial court of jurisdiction. *Id.* at 17. Additionally, Appellants dispute the trial court's determination that the Embreeville Entities and Appellants are one in the same. *Id.*

Relying on the definition of an indispensable party, Appellants assert that the Embreeville Entities have interests related to the underlying judgment, "as it is **the Embreeville Entities' funds** which the [c]ourt has taken control over." *Id.* at 18 (emphasis added). According to Appellants, "Embreeville Entities may be required to pay amounts well in excess of the judgment amount" into court. *Id.* at 19. Appellants point out the preliminary

injunction order requires the cooperation of the Embreeville Entities. **Id.** Finally, Appellants assert the trial court violated the Embreeville Entities' due process rights by concluding that reverse piercing of the corporate veil is appropriate. **Id.** at 20.

The failure to join an indispensable party to a lawsuit deprives the court of subject matter jurisdiction. **Orman v. Mortgage I.T.**, 118 A.3d 403, 406 (Pa. Super. 2015). "Unless all indispensable parties are made parties to an action, a court is powerless to grant relief." **City of Phila. v. Phila. Parking Auth.**, 798 A.2d 161, 166 (Pa. 2002) (quoting **Sprague v. Casey**, 550 A.2d 184, 189 (Pa. 1988)).

An indispensable party is one whose "rights are so connected with the claims of the litigants that no decree can be made without impairing or infringing upon those rights." **Sprague**, 550 A.2d at 189. As this Court has explained: "If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." **Orman**, 118 A.3d at 406.

Here, the trial court found that UTBF joined all indispensable parties:

To demonstrate [Appellants'] use of shell corporations to shield income and assets from the Judgment, UTBF came forward in the Emergency Petition with evidence to support claims that [Appellants] have failed to appear for depositions, have refused to disclose their residences, have failed to disclose their assets, and have used shell entities in the past to avoid UTBF's collection efforts. (Emergency Petition, ¶¶ 3, 5) UTBF also came forward with evidence to demonstrate [Appellants'] control of the Embreeville Entities. Specifically, that **the partners in Embreeville LP include Embreeville GP and Capstone, that**

- 8 -

> **Embreeville GP is the general partner of Embreeville LP[,] and Capstone is a limited partner in Embreeville LP, that the members of Embreeville GP include KCH, that KCH is owned by Mr. Hellings, that KCH is the general partner of Capstone, and that the [Appellants] are limited partners in Capstone.** (Emergency Petition, ¶¶ 6-10, 13) Further, UTBF provided Mr. Hellings' financial statement to Centric Bank in connection with a loan application that shows he expects to receive at least $2,700,000 in distributions from Embreeville LP in the third quarter of 2021. (Emergency Petition, 11 12)
>
> ….
>
> The issue here is whether a purported sham corporation utilized by a judgment debtor to fraudulently shield income and assets must be separately joined where the judgment debtor, who controls the corporations, is a party to the litigation and has notice of the proceedings. **[The court] found that because the allegations and supporting documentation that the Judgment Debtors and the Embreeville Entities are one in the same and the Judgment Debtors have been served and are participating in the proceedings, there is no issue. The Embreeville Entities have the opportunity to be heard at the final hearing.**

Trial Court Opinion, 4/4/22, at 10 (emphasis added). We agree with and adopt the trial court's analysis and affirm on this basis with regard to Appellants' second issue.

Appellants argue their third and fourth issues together. In their third issue, Appellants claim the trial court improperly failed to dissolve the preliminary injunction, because the relief awarded is prohibited by Pa.R.C.P. 3118. Appellants' Brief at 22. Appellants again cite the lack of service to the Embreeville Entities. *Id.* Additionally, Appellants claim the preliminary injunction order "provides relief outside the scope of that which is permitted under Pa.R.C.P. 3118." *Id.*

- 9 -

Appellants assert that the hearing envisioned by Rule 3118 was designed to be summary, and not plenary in nature. *Id.* Appellants argue that to seek injunctive relief under Rule 3118, the plaintiff must establish "(1) the existence of an underlying judgment; and (2) property of the debtor subject to execution." *Id.* at 24 (citation omitted). Regarding the second element, Appellants claim the trial court may not determine the legal title to property "based on principles of estoppel, fairness, or fraud[.]" *Id.* at 25. Appellants contend that Rule 3118 allows summary proceedings in aid of execution only to maintain the status quo. *Id.* According to Appellants, the trial court violated Rule 3118 because its injunction impacts the property of the Embreeville Entities, a third party. *Id.* at 27-28. Our review, however, discloses the preliminary injunction merely maintained the status quo imposed by the trial court's 2018 Charging Order.

Pennsylvania Rule of Civil Procedure 3118 allows for the trial court to enjoin property of a defendant subject to execution:

> **(a)** On petition of the plaintiff, after notice and hearing, the court in which a judgment has been entered may, before or after the issuance of a writ of execution, enter an order against any party or person
>
> **(1)** enjoining the negotiation, transfer, assignment or other disposition of any security, document of title, pawn ticket, instrument, mortgage, or document representing any property interest of the defendant subject to execution;
>
> **(2)** enjoining the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution;

**(3)** directing the defendant or any other party **or person** to take such action as the court may direct to preserve collateral security for property of the defendant levied upon or attached, or any security interest levied upon or attached;

….

**(6)** granting such other relief as may be deemed necessary and appropriate.

Pa.R.C.P. 3118(a)(1), (2), (3), (6) (emphasis added).

On August 6, 2018, in accordance with Pa.R.C.P. 3118(a), the trial court entered a Charging Order directing the Embreeville Entities, among others, "to Pay over to UTBF all sums of whatever kind and purpose, **now due or which may be in the future become due to [Appellants]** in the above entities individually or in combination." Charging Order, 8/6/18, at 2 (unnumbered) (emphasis added). The Embreeville Entities lodged no objection to the Charging Order, nor did they file an appeal. Instantly, Appellants do not challenge the 2018 Charging Order as invalid.

On October 12, 2021, the trial court entered the instant preliminary injunction order requiring the Embreeville Entities

> **to pay into Court** all amounts now or hereafter **paid by and/or due from** Embreeville Redevelopment GP, LLC and/or Embreeville Redevelopment, LP **to any one or more of the Payees** (as hereafter defined) **for later distribution to said Payees** and the Plaintiff as set forth in a subsequent order of this Court to be entered after hearing on Plaintiff's Emergency Petition for Special Injunction….

- 11 -

Preliminary Injunction Order, 10/12/21, ¶ B (emphasis added). The preliminary injunction further amended the Charging Order to add Capstone to the list of entities subject to its provisions. *See id.* ¶ A.

Thus, the preliminary injunction did not compel the Embreeville Entities to make payments not otherwise owed, or determine the Embreeville Entities' legal title to property "based on principles of estoppel, fairness, or fraud[.]" *See* Appellants' Brief at 24. The preliminary injunction instead maintained the status quo, as established by the 2018 Charging Order, until a final preliminary injunction hearing. *See* Preliminary Injunction, 10/12/21, ¶¶ A-B; *see also* Joint Stipulation, 2/22/22 (all parties, including Appellants, stipulated "that the injunction … remain in effect until such time as this Court enters a subsequent order regarding the aforesaid injunction"). Appellant's claim of a Rule 3118 violation therefore warrants no relief.

Appellants' additional claim, regarding "reverse piercing" of the corporate veil, is premature. Under Pennsylvania law, there is a "strong presumption" against piercing the corporate veil. *Mortimer v. McCool*, 255 A.3d 261, 268 (Pa. 2021). Thus, "[a]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Id.* (quoting *Wedner v. Unemployment Bd. of Rev.*, 296 A.2d 792, 794 (Pa. 1972)).

The Pennsylvania Supreme Court has held that the "corporate form may be disregarded 'whenever one in control of a corporation uses that control, or

uses the corporate assets, to further his or her own personal interests.'" ***Mortimer***, 255 A.3d at 268 (quoting ***Ashley v. Ashley***, 393 A.2d 637, 641 (Pa. 1978)). The Supreme Court directs our courts to consider the following factors for a piercing inquiry: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs[,] and use of the corporate form to perpetuate a fraud." ***Id.*** (citation omitted).

> Piercing the corporate veil is … a matter of equity, allowing a court to disregard the corporate form and assess one corporation's liability against another. The corporate veil will be pierced and the corporate form disregarded whenever justice or public policy demand, such as when the corporate form has been used to defeat public convenience, justify wrong, protect fraud, or defend crime. [***Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC***, 194 A.3d 1010, 1034-35 (Pa. 2018)].
>
> The corporate form thus may be disregarded "where rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless." [***Village at Camelback Prop. Owners Ass'n, Inc. v. Carr***, 538 A.2d 528, 532-33 (Pa. Super. 1988) (quoting ***Ashley v. Ashley***, 482 Pa. 228, 393 A.2d 637, 641 (Pa. 1978))]

***Id.*** at 268 (footnoted citations moved to main text).

> Further:

> In a reverse-piercing scenario, a claimant against the owner of a corporation must establish misuse of the corporate form to protect the owner's personal assets against some debt. As with enterprise liability, while this Court has never explicitly adopted reverse-piercing, **we have never rejected it either**. To rule out reverse-piercing as a viable doctrine would be tantamount to saying either that it is not possible for a corporation's owner to use that corporation as a shield against personal liability by the creative movement of assets or liabilities between himself and the corporation, or that equity cannot reach such an event even when

it happens.  Pennsylvania courts' equitable powers should not be so constricted.

….

Unlike some jurisdictions, Pennsylvania has resisted the temptation to formalize the inquiry with an ever-increasing number of predefined factors embodying the many considerations that might aid in determining whether the corporate form has been abused, and we do not propose to change course now.  If anything, simplicity is to be preferred.  … On this account, the inquiry reduces to a two-pronged test:

> First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and second, adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice….
>
> The second element … that there be some fraud, wrong or injustice—seems to be nothing more than a restatement of the basic starting point that piercing is an equitable remedy used to prevent injustice….

… The 'fraud or injustice' element tells the court when to pierce, the control element tells it against whom."  Because fraud or injustice can be perpetrated by and through corporate combines, enterprise liability offers one possible answer to the question "*Against whom*?"

….

[T]here is no clear reason to preclude *per se* the application of enterprise liability in the narrow form described herein.  …[I]t remains for the lower courts in future cases to consider its application consistently with the approach described above, in harmony with prior case law, mindful of the salutary public benefits of limited liability, and with an eye always toward the interests of justice.

**Mortimer**, 255 A.3d at 286-88 (emphasis added).

Consistent with **Mortimer**, our review discloses that the preliminary injunction maintained the status quo established by the 2018 Charging Order. The trial court has not finally determined whether the "unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and/or whether "adherence to the corporate fiction under the circumstances would sanction fraud or promote injustice[.]" **Id.** at 286-87. The trial court recognized that such determination may be made only after a final hearing:

> Here, the *ex parte* preliminary injunction was entered to preserve the status quo until such time as a hearing could be held to determine whether reverse piercing is an appropriate remedy. The *ex parte* injunction would not have remained in place past three days but for the parties' agreement….
>
> If after hearing it is determined that reverse piercing is an appropriate remedy, then [Rule 3118] will have been used to obtain payment of a judgment from the Judgment Debtor's assets, which is its purpose.

Trial Court Opinion, 4/4/22, at 8. We agree with the trial court's reasoning, and its conclusion that Appellants' "reverse piercing" challenge is premature. Thus, Appellants' "reverse piercing" claim fails.

For the above-stated reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/30/2022</u>