J-A09008-21

2022 PA Super 22

| | |
|---|---|
| JESSE TURNER AND MARTA M. BAKER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| THE ESTATE OF DAVID BAIRD AND MARGARET PUSKAR EXECUTOR AND MARGARET PUSKAR | |
| Appellants | No. 599 WDA 2020 |

Appeal from the Order Entered September 29, 2020
In the Court of Common Pleas of Westmoreland County
Civil Division at No: 2406 of 2017

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

OPINION BY **STABILE, J.:**                    **FILED: FEBRUARY 8, 2022**

Appellants, The Estate of David Baird and Margaret Puskar, Executor and Margaret Puskar in her own right, appeal from a September 29, 2020 order.  Finding the trial court lacked subject matter jurisdiction over this action, we vacate.[1]

The parties to this action own neighboring properties.  At issue is a boundary dispute and the parties' use of an abandoned roadway that runs between the parties' property.  We used the term "abandoned" advisedly, as

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We also deny as moot Appellants' April 16, 2021 motion to continue oral argument.

the trial court found that the roadway was abandoned—but never formally vacated—by the Borough of South Greensburg (the "Borough"). Non-Jury Trial Opinion and Order of Court, 6/5/19, at 8-9. Because the Borough has not formally vacated the roadway, and because use of the roadway is in dispute in this matter, the Borough is an interested and indispensable party to this action. As such, we are constrained to vacate the trial court' order for lack of subject matter jurisdiction.

The trial court's opinion sets forth the pertinent facts:

> [Appellees] purchased property located at 2302 Skidmore Road, Greensburg, Pennsylvania, 15601 ("Plaintiffs" Property") on June 30, 2006, for the purpose of using the same as their residence. [Appellant] David Baird purchased property located at 2301 Rear Pope Street, Greensburg, Pennsylvania 15601 ("Defendant's Property") on July 14, 2014. He presently resides on the property with occupant Margaret Puskar. The instant dispute relates to two separate parcels of land, being a portion of land deeded to [Appellees] ("Deeded Property"), as well as a portion of land between the parties' properties that is not identified in either deed ("Disputed Property").
>
> […]
>
> At trial, [Appellee] Turner testified that [Appellees] maintained both the Deeded Property and at least the grassy area of the Disputed Property between approximately 2006 and 2014 without interference, and they have always believed that this area belong [sic] to them and treated it as such. [Appellee] Turner testified that this situation changed in approximately 2015 when [Appellants] erected a fence on their property and acquired a German Shepard dog. After an altercation between the parties in spring of 2016 involving the dog, [Appellants] began entering onto and/or altering the Deeded Property and the Disputed Property. Examples of [Appellants'] behaviors with regard to the Deeded Property and the grassy area of the Disputed Property include mowing the grass, poisoning and picking out the grass in order to extend the gravel area of the drive, walking the dog on the

property, and an attempt to install a fence on the property. [Appellee] Turner also testified to repeated incidences of harassing conduct on the part of [Appellants], including shining floodlights into the window of the [Appellees'] daughter's bedroom window and repeated attempts by [Appellant] Puskar to provoke physical confrontation with [Appellees].

[Appellant] Baird also testified at time of trial, stating that he had lived on the Defendants' Property intermittently for his entire life, as it had previously belonged to his mother, since sometime in the 1940s. [Appellant] Baird disputed [Appellee] Turner's testimony as to care of the grassy area of the Disputed Property, stating that his family has maintained and occupied the property for many years, doing tasks including mowing the grass. [Appellant] Baird denied enlarging the gravel area on the side of the Disputed Property closest to Plaintiffs' Property. He acknowledged that guests and members of both households have used the gravel drive for ingress, egress and parking over the course of many years, including during the period of residence of the Beveridges, previous owners of the Plaintiffs' Property from approximately 1973 to 2006. [Appellant] Baird testified to pleading guilty in approximately 2014 or 2015 to a charge of unsworn falsification to authorities.

[…]

Both parties' surveys reference a forty-foot-wide roadway between the properties. Mr. [Arthur] Kromel [Appellees' surveyor] testified that he was unsure as to where he gathered the information to place the roadway, and he does not know if said roadway actually existed. Mr. [Donald B.] Harper [Appellants' surveyor] testified that he did not rely on any recorded documentary evidence in placing the roadway on his survey, but instead created the roadway by using the deeds to survey and plot the property lines which turned out to be 'somewhat parallel.' He then 'adjusted the Baird deed' to make the lines parallel and to place exactly forty feet between the lines.

As to documentary evidence regarding the existence of a road, Eric Wanson, Penndot's chief of surveys, testified at trial. A Pennsylvania legislative act from 1933 shows the adoption of various routes including a local route 64127 which is now Route 819. A Penndot construction and condemnation of right-of-way plan from 1936 discusses rerouting the road near the parties' properties. The road in its present form as Route 819 began

construction in 1937 and was completed in 1938. A letter dated October 31, 1938 to South Greensburg Borough Council Secretary, stating that the Commonwealth was ceasing to maintain the original portion of the road, as it was no longer a part of the State Highway System [sic].

Further testimony was provided by current part-time Secretary for the Borough of South Greensburg, Kaitlyn Lewis, who testified that she had no knowledge or documentation of a roadway existing and/or being abandoned by the Borough of South Greensburg between or on the parties' properties near the Deeded Property or the Disputed Property, with the exception of a street light map from 1939 appearing to show a road in the same area. Testimony was also provided by Eric Glod, department head of Westmoreland County's geographic information systems office of tax mapping. He provided a farm map from 1910 showing a roadway in the approximate area of the disputed road.

[…]

Looking to the evidence presented by [Appellants] as to the existence of the disputed road, it certainly appears that a roadway existed in approximately the disputed area prior to 1933 based on the 1910 farm map. In 1933 it was formally adopted, and it was abandoned to the Borough of South Greensburg in 1938. Records regarding the road are apparently nonexistent from that point forward, excepting the 1939 South Greensburg Streetlight Map showing a road in the approximate disputed location.

Taking all of the evidence together, it appears as though a road existed in the disputed area from at least 1910 through 1939. At some subsequent point the road was transformed into the gravel drive that it remains today. While it is certain that a road did exist and that it was subsequently abandoned, there is inadequate evidence for this court to determine the actual width of the prior road. […]

Even if this court were to find convincing evidence as to the exact width of the abandoned roadway […] [v]acation and abandonment of public roads are two distinct actions with vacation having more stringent requirements[.] […] No evidence was presented to show that the road at issue in this case was formally vacated as opposed to abandoned[.]

- 4 -

Non-Jury Trial Opinion and Order of Court, 6/5/19, at 2-6, 8-9 (record citations omitted).

Appellees filed this action on May 12, 2017 with a complaint alleging counts for ejectment, quiet title, trespass, and injunctive relief. On September 6, 2017, the trial court overruled Appellants' preliminary objections. On August 3, 2017, the trial court entered a preliminary injunction prohibiting, among other things, Appellants' erection of a fence on the property in dispute. The trial court conducted a bench trial on September 24 and 25, 2018. On June 5, 2019, the trial court issued its findings of fact, conclusions of law, and an order entering a verdict in Appellees' favor on one count of ejectment and one count of trespass, dismissing Appellees' quiet title action as moot, and entering a permanent injunction in Appellees' favor. As to the shared gravel driveway providing ingress and egress to both parties, the court ordered the parties to "equally share use of the existing gravel drive for ingress and egress onto their respective properties, without interfering with any other party's use of said drive. Parties may maintain and occupy the un-deeded grassy areas abutting their respective properties." Non-Jury Trial Opinion and Order of Court, 6/5/19, at 17, ¶ 8.[2]

_____

[2] On September 24, 2020, this Court entered an order directing the Westmoreland County Prothonotary to issue notice of the trial court's June 5, 2019 order in accord with Pa.R.C.P. No. 236. Order, 9/24/20. On October 5, 2020, this Court entered an order acknowledging receipt of an updated docket reflecting Rule 236 notice was provided to the parties on September 29, 2020.

Appellants present two questions for review:

1. Did the trial court improperly exercise its authority to dismiss Appellants' post-trial motions not on the merits, when the relevant Rules of Civil Procedure require the court to provide an opportunity to cure non-filing before dismissal?

2. Did the court have subject matter jurisdiction to decide the matter before it given it found the land in-between the litigants' properties to be an abandoned as opposed to vacated road?

Appellants' Brief at 10.

We begin with a consideration of the trial court's subject matter jurisdiction. "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented." *Schultz v. MMI Prod., Inc.*, 30 A.3d 1224, 1226 (Pa. Super. 2011). Issues of subject matter jurisdiction cannot be waived. *In re Melograne*, 812 A.2d 1164, 1166 (Pa. 2002). "The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved[.]" *Strasburg Scooters, LLC v. Strasburg Rail Rd., Inc.*, 210 A.3d 1064, 1067 (Pa. Super. 2019) (quoting *In re Patterson's Estate*, 19 A.2d 165, 166 (Pa. 1941)). "Moreover, it is "well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void."

_____

The caption therefore reflects an appeal from the order entered September 29, 2020. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

*Id.* (quoting *Commonwealth ex. rel. Howard v. Howard*, 10 A.2d 779, 781 (Pa. Super. 1940). Subject matter jurisdiction raises a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Id.* "The failure to join an indispensable party is a non-waivable defect that implicates the trial court's subject matter jurisdiction." *Id.* at 1069.

A party is indispensable

when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation:

1. Do absent parties have a right or an interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

This Court has held that in a quiet title action, all parties who claimed title to the property at issue must be joined as indispensable parties.

*Id.*

As explained above, this action involves a dispute over a former roadway running between the parties' properties. Surveying revealed a forty-foot-wide

gap between the parties' properties. Part of the gap is occupied by a gravel driveway which the parties and their predecessors in interest have used for ingress and egress for many years. Records indicate that a roadway, long since abandoned, once ran between the properties. The roadway accounts for the gap of un-deeded land in between the properties.

In *Nelson by Nelson v. Dibble*, 510 A.2d 792 (Pa. Super. 1986), as in the instant matter, the parties disputed the proper use of an abandoned roadway abutting both properties. The trial court in that case found as follows:

> First of all, whether we call this Lavery Lane vacated or abandoned, it is my opinion, at this point at least, that that is a difference without any real distinction. It is now no longer maintained or claimed by the township. The Court finds that there does exist an easement either by the prescriptive use of the plaintiff or as a public road now ignored and this is available to both parties; that neither party may deny the other party use of this easement; neither party may block nor deliberately obstruct the use of the easement by the other party.

*Id.* at 793. This Court held the trial court was in error, noting that a claim of adverse possession does not lie against Commonwealth property or local property devoted to public use. *Id.* at 794. This Court also explained that the outcome of the underlying action was "linked inextricably with whether title to the subject property is vested in Greene Township." *Id.* at 795. If the township retained any title to the roadway, i.e., it had not formally vacated its interest in it, then the township was an indispensable party. *Id.*

In ***Clifford Twp. v. Ransom***, 398 A.2d 768 (Pa. Commw. 1979),[3] the township appealed from an order directing it to maintain a portion of an abandoned road for the benefit of the plaintiffs. The Commonwealth Court affirmed, concluding that the township never formally abandoned the roadway in accord with applicable statutory procedures, and therefore was still responsible for its maintenance. ***Id.*** at 769-70.

In ***Fried-El Corp. v. Borough of Monroeville***, 474 A.2d 713 (Pa. Commw. 1984), Fried-El Corp. occupied land abutting an abandoned roadway that was formerly part of a state highway. A letter to the borough from the former Commonwealth Secretary of Highways confirmed this. ***Id.*** at 715. The borough never used or maintained the roadway abandoned to it, it was completely covered over with earth and not used for access to other areas. ***Id.*** Fried-El Corp. petitioned the trial court for the appointment of viewers to consider whether to formally vacate the part of the former highway abutting its property. ***Id.*** at 715. The trial court eventually concluded that Fried-El Corp. needed to petition the borough to vacate the roadway. ***Id.*** The Commonwealth Court concluded that the trial court was correct, quoting with approval from that court's opinion: "An abandoned section becomes a highway, road or street of the municipality. The fact that the local municipality

---

[3] We may rely on opinions from our Commonwealth Court as persuasive authority. ***Petow v. Warehime***, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010), ***appeal denied***, 12 A.3d 371 (Pa. 2010).

does not maintain the same, as is indicated here, does not divest the local municipality of its jurisdiction over this section or result in a de facto vacation of the section." ***Id.***

Instantly, as in ***Fried-El.***, the record reflects a letter from the Commonwealth to the Borough Council Secretary, dated October 31, 1938, abandoning a part of former State Route 819.[4]  Non-Jury Trial Opinion and Order of Court, 6/5/19, at 6; Appellants' Trial Exhibit N.  A portion of that abandoned roadway is apparently the un-deeded property dividing the parties' properties, and which both use for ingress and egress.  The Borough has no record of formally vacating the roadway in question.[5]  Here, as in ***Fried-El*** and ***Ransom***, the Borough no longer uses or maintains the abandoned roadway.  Rather, the Borough simply abandoned it, and part of what is left abuts the parties' property.  ***Nelson*** teaches that, without evidence of a formal vacation, the Borough of South Greensburg is an indispensable party.  That is, the Borough is absent from this litigation, yet it retains an interest in the

---

[4]  The State Highway Law, 36. P.S. § 670-101, *et. seq.*, authorizes the Secretary of Highways to abandon portions of former state highways.  36 P.S. § 210.

[5]  ***See*** the Borough Code, 8 Pa.C.S.A. §§ 1731 and 1732 governing a borough's authority to vacate a roadway and an interested party's ability to petition for therefor.

property under dispute. For this reason, we are constrained to conclude that the trial court lacked subject matter jurisdiction over this action.[6]

Appellees argue that Appellants act in bad faith by raising this issue only after an adverse trial result. We need not discern Appellants' motive for raising the issue of subject matter jurisdiction for the first time on appeal. The law expressly allows any party to raise subject matter jurisdiction at any time; the issue cannot be waived, and this Court could have raised the issue *sua sponte* if Appellants had not. Further, we do not believe, as Appellees seem to, that our result will incentivize sandbagging on this issue. Both parties to a property dispute have a strong incentive to identify all interest parties rather proceed through the time and expense of trial only to learn at a later stage that the trial court lacked jurisdiction all along. In any event, the parties cannot, by the collective failure to identify an interested third party, deprive the third party of its right without notice.

Based on the record before us, the trial court lacked jurisdiction over this matter because the Borough was not a party and because the abandoned

_____

[6] We are cognizant that one of Appellees' ejectment causes of action related solely to property the trial court described as "Deeded Property," that is, property shown by survey to be included within Appellees' deed description. Appellants, however, claimed at trial that Appellees' Deeded Property (whose deed description can be traced back to 1930) overlaps a portion of the disputed former roadway (which existed at least as far back as 1910) that rightfully belongs to Appellants. As such, the Borough had an interest in the ejectment cause of action.

roadway was never vacated.[7] We therefore vacate the order on appeal as a nullity.

Order vacated. Application for continuance denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/8/2022

---

[7] **See** 8 Pa.C.S.A. §§ 1731 and 32; **see also**, 36 P.S. § 670-214; **Petition of Turkey Run Fuels, Inc.**, 95 A.2d 370 (Pa. Super. 1953) (holding that, in some circumstances, courts of common pleas may order an abandoned roadway vacated under 36 P.S. § 670-214).