J-A26017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PROSPECT CCMC, L.L.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BERKSHIRE HATHAWAY HOMESTATE | : | No. 839 EDA 2022 |
| INSURANCE, CO. | : | |

Appeal from the Order Entered March 2, 2022
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2018-003234

BEFORE: BOWES, J., KING, J., and PELLEGRINI, J.*

CONCURRING MEMORANDUM BY BOWES, J.: **FILED MARCH 02, 2023**

I agree with my esteemed colleagues that Prospect CCMC, L.L.C. ("Crozer") has failed to establish that its complaint stated a viable claim against Berkshire Hathaway Homestate Insurance, Co. ("Berkshire"). However, I would not affirm the grant of summary judgment to Berkshire based upon the failure of Crozer, a Pennsylvania corporation who treated Berkshire's insured in Pennsylvania, to exhaust New Jersey administrative remedies as purportedly mandated by a New Jersey statute. Instead, I would hold that the trial court properly concluded that Crozer failed to create an issue of material fact as to its contractual right to recover.

_____

* Retired Senior Judge assigned to the Superior Court.

The Majority concludes that, "[v]iewing the facts in the light most favorable to Crozer, summary judgment was properly granted to Berkshire because the record contains no evidence that would establish Pennsylvania's jurisdiction over [the] underlying worker's compensation claim." Majority Memorandum at 11. Berkshire did not move for summary judgment on that basis. Rather, it contended that Crozer failed to produce evidence to support its breach of contract claim. While this Court, as a general rule, may affirm a trial court ruling on any basis apparent from the record, we "cannot affirm a trial court's grant of summary judgment upon an argument that was never raised in support of the summary judgment motion." *Shamis v. Moon*, 81 A.3d 962, 970 (Pa.Super. 2013).

Certainly, we may *sua sponte* address the issue of subject-matter jurisdiction. *See*, *e.g.*, *Liberty Mut. Grp., Inc. v. 700 Pharmacy, LLC*, 270 A.3d 537, 544 (Pa.Super. 2022). However, when jurisdiction is determined to be lacking, the only valid disposition is dismissal of the action. *See MCI WorldCom, Inc. v. Pennsylvania Pub. Util. Comm'n*, 844 A.2d 1239, 1249 (Pa. 2004) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Consequently, if the Majority were correct in its jurisdictional ruling, the proper result would be the dismissal of the action, not affirmance of the grant of judgment in favor of Berkshire. In the absence of jurisdiction, the judgment would be a nullity. *See*, *e.g.*, *Turner v. Estate of*

***Baird***, 270 A.3d 556, 560 (Pa.Super. 2022) ("[I]t is well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void." (cleaned up)).

Yet, I am unconvinced that the Majority is correct. Its ruling is based upon a New Jersey statute which states: "Exclusive jurisdiction for any disputed medical charge arising from any claim for compensation for a work-related injury or illness shall be vested in the [New Jersey Division of Worker's Compensation]." Majority Memorandum at 9 (internal quotation marks omitted) (quoting N.J. Stat. § 34:15-15). While this lengthy statute unquestionably governs medical bill disputes between an employer and its injured employee, nothing on its face precludes a foreign medical provider from suing the employer to recover the costs of treatment to the employee in the jurisdiction in which the services were provided. The Majority has not cited, nor have I uncovered, any case in which this New Jersey statute was invoked in the way the Majority has employed it.

To hold that the state of New Jersey may lawfully deprive an aggrieved Pennsylvania company of its right to seek redress in Pennsylvania for a loss it sustained in Pennsylvania, the Majority would first have to undertake examinations of the principles such as conflict of laws and constitutional rights

that I question would ultimately support its decision.[1]  Rather than trouble myself with unnecessary legal analyses, I would resolve this appeal through examining the ruling that was actually made and appealed to this Court.

Crozer filed a complaint alleging that, during the relevant time, it and Berkshire "were parties to the AWCA Preferred Provider Organization ("AWCA PPO") agreement with Aetna/Coventry," and that this agreement entitled Crozer to pay it ninety percent of the charges for the care of Berkshire's employee.  Complaint, 4/30/18, at ¶¶ 4-5.  Nearly four years later, when it responded to Berkshire's motion for summary for judgment, Crozer had yet to produce any agreement to which it and Berkshire were both parties, let alone one that mandated Berkshire to pay the demanded sum.

The best that Crozer could muster was:  (1) an amendment of an AWCA agreement signed only by Crozer and AWCA concerning compensation for services rendered to Pennsylvania Worker's Compensation claimants; (2) a license for computer software for medical bill review from Medata to licensees Oak River Insurance Company, Cypress Insurance Company, Brookwood Insurance Company, Redwood Fire & Casualty, and Cornhusker Casualty Insurance, that incorporated by reference differing PPO rates for nine different

---

[1] **See** Crozer's Brief in Support of Answer to Preliminary Objections, 6/28/18, at 4 (quoting **Gov't Employees Ins. Co. v. Allstate Ins. Co.**, 818 A.2d 474, 485 (N.J. Super. Ct. App. Div. 2003)) ("There are . . . constitutional problems that would be created if New Jersey asserted jurisdiction over out-of-state companies not transacting any business in this State and without any ties to this State.").

networks, one of which was Aetna/Coventry; and (3) deposition testimony indicating that Oak River is an "affiliate" of Berkshire. *See* Response to Motion for Summary Judgment, 2/11/22, at Exhibits A & B; Motion for Summary Judgment, 1/12/22, at Exhibit J (Deposition of Jade Uhl, 12/14/21, at 79-80 ("Q. And by the way, Oak River is essentially Berkshire Hathaway? A. Yes, that is my employer. Their affiliate.")).

Faced with this evidentiary record, I would hold that Crozer's failure to produce any contract with Berkshire, which was the only entity it actually sued, entitled Berkshire to judgment as a matter of law on the breach of contract claim, which was the only one raised in its complaint. Furthermore, I agree with the trial court that the agreement of an affiliate of Berkshire to use computer software that utilized the Aetna/Coventry pricing along with eight others, which did not indicate that Crozer was an intended third-party beneficiary, likewise failed to establish in Crozer a right to force Berkshire to utilize Medata's computer application to reach the pricing result Crozer desired. Although Crozer produced evidence that Berkshire initially applied the ninety-percent compensation rate upon the mistaken belief that the work-related accident occurred in Pennsylvania, and that it applied that rate in other instances related to other providers, Crozer established no contractual right to relief in this instance.

Accordingly, I would affirm the judgment in favor of Berkshire for the reasons explained by the trial court.[2]  **See** Trial Court Opinion, 4/27/22, at 6-8 (explaining that Crozer failed to establish it had a right to ninety-percent compensation pursuant to a contract with Berkshire or as a third-party beneficiary to Berkshire's contract with another entity).

_____

[2] To the extent Crozer complains that the trial court "reversed the burdens of proof" by faulting Crozer's failure to produce evidence of an applicable, enforceable contract, Crozer fails to appreciate that it may not rest on its pleadings in opposing summary judgment, but must come forth with evidence which, if believed by the fact-finder, would support a verdict in its favor.  **See**, **e.g.**, **DiDomizio v. Jefferson Pulmonary Associates**, 280 A.3d 1039, 1045 (Pa.Super. 2022) ("To survive a defense motion for summary judgment, a plaintiff must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor.").