J-S13003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHARLES TALBERT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CENTURION | : | No. 1263 MDA 2024 |

Appeal from the Order Entered August 6, 2024
In the Court of Common Pleas of Cumberland County
Civil Division at No(s):  2022-01051

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: APRIL 22, 2025**

Charles Talbert appeals pro se from the order entered on August 6, 2024, denying his request to open and/or strike judgment of non pros. Talbert argues the trial court erred in (1) entering judgment of non pros while his request for an extension of time to file a certificate of merit ("COM") was pending, (2) denying his request for an extension of time, (3) finding res ipsa loquitur does not apply, (4) not advising him what type of expert is required, and (5) not permitting him to amend his complaint. Finding no merit to any of these contentions, we affirm.

The trial court set forth the relevant factual and procedural history:

> [Talbert] filed this action on February 7, 2022, alleging [Centurion] and several other named defendants failed to provide adequate mental health treatment during his period of incarceration at the State Correctional Institution — Camp Hill, located in Cumberland County. [Talbert] did not file a [COM] with

his complaint, even though he alleged medical malpractice and professional negligence.

[Talbert] amended his complaint on December 18, 2022 to dismiss several other defendants and concentrate on allegations solely against Defendant Centurion. [Talbert] made claims for [c]orporate [n]egligence,[] [b]reach of [i]mplied-in-[l]aw [c]ontract,[ v]icarious [l]iability, [h]ealth [c]are [f]raud,[] and [r]etaliation.[] [Talbert's] [c]orporate [n]egligence[] claim alleged that [Centurion] breached a duty to [Talbert] "by way of lack of diligence and care, in reckless disregard of its legal duty owed to [Talbert] and in reckless disregard of the consequences of its extreme departure from the appropriate standard of care." Though [Talbert] claimed professional negligence through a breach of the standard of care, he again failed to file a [COM].

[Centurion] filed preliminary objections to the complaint on April 24, 2023 seeking, among other relief, dismissal of the action for [Talbert's] failure to file a [COM]. Th[e trial c]ourt overruled that preliminary objection because preliminary objections are not the proper procedural mechanism to seek dismissal of an action based on failure to file a [COM]. On December 12, 2023, [Centurion] filed a notice of intention to seek judgment of non pros pursuant to Pa.R.C.P. No. 1042.7 for [Talbert's] failure to file a [COM]. [Talbert] then moved for an extension of time to file his [COM] on January 18, 2024. On January 24, 2024, th[e trial c]ourt issued a [r]ule to [s]how [c]ause on [Centurion] why [Talbert's] request for extension should not be granted. [Centurion] did file a response in opposition to that [r]ule to [s]how [c]ause, but it was not transmitted to the [c]ourt, and [Talbert's] [m]otion for [e]xtension of [t]ime remained open. On June 18, 2024, [Centurion] filed a [p]raecipe to enter [j]udgment of [n]on [p]ros for [Talbert's] failure to file a [COM]. [Talbert] continued to file motions to the docket, however, because the case was not marked as closed, leading [Centurion] to file a [m]otion for [c]larification as to whether the case was open or closed.

Th[e trial c]ourt then examined the docket and realized that [Talbert's] [m]otion for [e]xtension was outstanding. On July 1, 2024, th[e trial c]ourt gave [Talbert] 30 additional days to file a [COM] and scheduled a hearing for August 5, 2024 for [Talbert] to argue why he would not need a [COM]. On July 16, 2024, [Talbert] filed a [COM] to say that expert testimony in this matter is unnecessary, and that he "certifies that the surrounding

circumstances of this claim is entitled to an inference of negligence under the doctrine of res ipsa loquitur." Despite that filing, however, [Talbert] filed an additional [m]otion to [e]xtend [t]ime to [f]ile a [COM] on August 2, 2024, stating that while he believes an expert is not necessary in this matter, he would need additional time if the court deems one necessary.

A hearing on the matter was held on August 5, 2024. At that hearing, [Talbert] stated that he believed that he would not need a medical expert because his sentencing court ordered him to receive mental health treatment and [Centurion] was not complying with the sentencing order. He stated that a "court-appointed" psychiatrist evaluated him before he was sentenced and deemed it "clinically necessary for him to receive intense psychiatric treatment for his personality difficulties that includes poor impulse control, poor judgment, and a lack of insight into the underlining (sic) nature of his psychological conflict and symptoms." He further stated that he believed that "a jury can reasonably infer negligence by Centurion's failure to comply with the conditions of his state sentence for treatment." He also conveyed that [Centurion] removed him from treatment when he was placed into solitary confinement and stated that he believed that "a reasonably competent jury can infer to [(sic)] negligence by Centurion's failure to comply with state law and prison policy, which has led to his mental suffering." He then stated that at trial, he would be relying on "three authorities that are available to the entire public," namely, a book entitled *The Everything Psychology Book* by Kendra Cherry; *The Diagnostic and Statistical Manual of Mental Disorders*, fifth edition (DSM-V); and Title 55 of the Pennsylvania Administrative Code, which pertains to the Department of Human Services' regulations for mental health treatment facilities. [Talbert] asserted that all of these publications are written clearly enough for lay people to understand, so that should negate his need for an expert.

The [trial c]ourt then explained to [Talbert] on the record why his thought process was flawed:

> So when we talk about something not needing experts, it has to be clear from the writing. Your complaint[;] that you don't need anything else to interpret that. So someone would have to read your complaint and not need the DSM-5-TR, or not need that other book, or not need any other resource to

determine whether they had a duty of care, they breached the duty of care, and harm resulted from that. So when you are holding up those books, that is kind of running counter to your position. Because if we need those books to understand what you are talking about, then we need an expert, because those books are written by experts.

[Talbert] then reiterated that he did not need an expert because [Centurion] had not complied with the sentencing order. Th[e trial c]ourt asked him if he had been seen at all by [Centurion], to which [Talbert] replied that [Centurion] has failed to place him in a certain "code status" as an inmate with "serious mental illness," which would ensure that he was not placed in solitary confinement due to his mental health behaviors. [Talbert] did admit that he was seen by [Centurion], but it was "four or five months" into his incarceration instead of right away. [Talbert] is currently in treatment with one of [Centurion's] psychiatrists and is receiving medication.

[Centurion] then argued that [Talbert's] claims would not be easily understood by the average lay person and that an expert would be necessary to prove a standard of care, a breach of that standard and causation. Additionally, [Centurion] argued that [Talbert], as a self-represented litigant, is prohibited from certifying that expert testimony is unnecessary, and that [Talbert's] [COM] needed to be accompanied by the written statement of an expert.

Th[e trial c]ourt upheld the judgment of non pros, explaining to [Talbert] "I do think you need experts. I do think you have [had] plenty of time to contact one. … [Y]ou've had quite a bit, quite a bit of time."

[Talbert] fled a timely notice of appeal to the [S]uperior [C]ourt.

Trial Court Opinion, 11/22/24, at 1-5 (footnotes, brackets, and some italics omitted).

Talbert complied with the trial court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b). Talbert raises five claims of error:

1. Whether the trial court erred in entering judgment of non pros for [Centurion] while a motion for extension of time to file a [COM] was still pending[?]

2. Whether the trial court erred in denying [Talbert] another extension in light of his current circumstances[?]

3. Whether the trial court erred in failing to allow the jury to infer negligence under the theory of res ipsa loquitur[?]

4. Whether the trial court erred in failing to specify what facts and/or evidence was required of an expert in order to justify the [COM] requirement[?]

5. Whether the trial court erred in failing to allow [Talbert] to cure any potential defect by denying him the ability to amend the complaint[?]

Appellant's Brief, at 4.

As Talbert is challenging the trial court's denial of his petition to open and/or strike judgment non pros, we begin with our standard and scope of review:

When reviewing a petition to open and/or strike a judgment of non pros pursuant to Pa.R.C.P. 1042.6, our Court may reverse the decision of the trial court only if we find that the trial court abused its discretion in reaching its determination. A petition to strike a judgment is a common law proceeding which operates as a demurrer to the record. It is well-established that a motion to strike off a judgment of non pros challenges only defects appearing on the face of the record and that such motion may not be granted if the record is self-sustaining.

**Mumma v. Boswell, Tintner, Piccola & Wickersham**, 937 A.2d 459, 463 Pa. Super. 2007) (citations, italics, and quotation marks omitted). "A petition seeking to open a judgment of non pros must alleged that: (1) the petition is timely filed; (2) there is a reasonable explanation or legitimate excuse for the

- 5 -

inactivity or delay[;] and (3) there is a meritorious cause of action." *Zokaites Contracting Inc. v. Trant Corp.*, 968 A.2d 1282, 1286 (Pa. Super. 2009) (italics and citation omitted).

Talbert first argues the trial court erred in failing to open and/or strike the judgment of non pros because there was a pending motion for extension of time to file a certificate of merit. *See* Appellant's Brief, at 12-13.

Rule 1042.7 provides when entry of judgment of non pros should be entered for failure to file a certificate of merit:

> (a) The prothonotary, on praecipe of the defendant, shall enter a judgment of non pros against the plaintiff for failure to file a certificate of merit within the required time provided that
>
> > (1) there is no pending motion for determination that the filing of a certificate is not required or no pending **timely filed** motion seeking to extend the time to file the certificate,
> >
> > (2) no certificate of merit has been filed,
> >
> > (3) except as provided by Rule 1042.6(b), the defendant has attached to the praecipe a certificate of service of the notice of intention to enter the judgment of non pros, and
> >
> > (4) except as provided by Rule 1042.6(b), the praecipe is filed no less than thirty days after the date of filing of the notice of intention to enter the judgment of non pros.

Pa.R.C.P. 1042.7 (emphasis added).

Talbert's complaint was filed on February 7, 2022. Pursuant to Rule 1042.3, Talbert's certificate of merit, or request for an extension, was due on April 8, 2022. *See* Pa.R.C.P. 1042.3(a), (d) (providing 60 days to file a timely

- 6 -

certificate of merit and an extension request must be filed either within those 60 days or within 30 days after the filing of a notice of intention to enter judgment of non pros); **Hoover v. Davila**, 862 A.2d 591, 594 (Pa. Super. 2004) (providing the time for filing a certificate of merit runs from the original, not amended, complaint and finding the request for an extension of time to file a certificate of merit must be filed within that 60-day window). Talbert did not file a certificate of merit on or before April 8, 2022. Nor did Talbert request an extension of time to file a certificate of merit until January 18, 2024.

Talbert does not argue his request for an extension of time to file a certificate of merit was timely filed. He merely argues that because a request for extension was filed, the court erred in entering judgment of non pros. **See** Appellant's Brief, at 12-13. We disagree.

Rule 1042.7 clearly provides that the prothonotary shall not enter a judgment of non pros if a "**timely filed** motion seeking to extend the time to file the certificate" is pending. Pa.R.C.P. 1042.7(a)(1) (emphasis added). As Talbert did not timely file his request for an extension, the prothonotary did not err in entering non pros and the trial court did not err in denying his petition to open and/or strike judgment of non pros on this basis.

Talbert next argues he was entitled to another extension of time to file a certificate of merit. **See** Appellant's Brief, at 13-15. Talbert acknowledges that his request for an extension of time must be timely filed, and he must provide good cause for the extension. **See id.** at 13. However, Talbert never

- 7 -

filed a timely request for an extension of time to file a certificate of merit, as it was due on or before April 8, 2022. **See** Pa.R.C.P. 1042.3(a), (d). Further, Talbert did not present any evidence of good cause and claims, without support, that he was unable to call or write to experts because he was in solitary confinement at the prison. **See** Appellant's Brief, at 14-15. Talbert did not provide the trial court with any information about his solitary confinement, including how long he was placed in solitary confinement, what access he had to call or write experts, and why, after over two years, he was unable to contact an expert sooner.

Despite the untimeliness of the extension request, the trial court did grant an extension until July 31, 2024. As the trial court noted:

> [Talbert's] second [m]otion for [e]xtension of [t]ime was deficient under Pa.R.C.P. No. 1042.3(d). It was not filed prior to the expiration of the original extension, which lapsed on July 31, 2024. Nor did [Talbert] provide "good cause" for an additional extension. It merely reiterated [Talbert's] belief that an expert was not required in this matter. The only "good cause" for the delay provided was [Talbert's] request that he be permitted to file a certificate of merit after he is released from incarceration.
>
> A similar situation was examined by the Commonwealth Court in **Glenn v. Mataloni**, 949 A.2d 966 ([Pa. Cmwlth.] 2008). In that matter, the plaintiff was an inmate serving a life sentence in a state correctional institution and filed suit against the Department of Corrections and its medical staff for allegedly misdiagnosing him with hemorrhoids when he believed that the cause of his pain was due to a "parasitic worm-like creature moving inside his anal/intestinal cavity." Plaintiff filed suit for negligence and medical malpractice but failed to file a certificate of merit. The defendants entered a judgment of non pros, and plaintiff filed a motion to open/strike requesting an extension of time to file a certificate of merit, which was denied by the trial court.

The Commonwealth Court noted that though plaintiff's motion for extension of time noted his difficulty in obtaining the statement of a physician to include with his certificate of merit, [] he did not demonstrate any actions that he took to try to obtain a medical statement before he filed the request. On appeal, the plaintiff asserted that the trial court's denial of his motion deprived him of his constitutional due process rights. The Commonwealth Court concluded that the plaintiff "simply did not provide a sufficient factual basis upon which the trial court could consider his claim in his motion for an extension of time. … Simply asserting his 'difficulty' in trying to comply with the rules was insufficient to form any support for his claim of abuse of discretion on the basis of a subsequent constitutional claim." In upholding the trial court's decision, the Commonwealth Court held "we cannot conclude that the trial court's order represents manifest unreasonableness or a resolution that is so lacking in support as to be clearly erroneous."

Such is the case here. [Talbert] never articulated why he could not obtain the statement of a physician to support his claims, other than the fact that he is incarcerated. He was granted a substantial period of time to file a certificate of merit, but he instead opted to continue to argue that he did not need one. As such, there was no abuse of discretion in failing to grant [Talbert's] second request for [an] extension of time.

Trial Court Opinion, 11/22/24, at 9-11 (footnotes and italics omitted).

We find no abuse of discretion.[1] The trial court provided Talbert an extension of time to which he was not entitled, and yet Talbert still failed to file a certificate of merit. Talbert has not provided "good cause" for his request.

_____

[1] The trial court refers to the Commonwealth Court decision in ***Glenn v. Mataloni***, 949 A.2d 966 (Pa. Cmwlth. 2008). While Commonwealth Court decisions are not binding on this Court, we may rely on them for their persuasive value. ***See Turner v. Estate of Baird***, 270 A.3d 556, 561 n.3 (Pa. Super. 2022).

The trial court did not err in denying Talbert's untimely request for an extension of time.

In his third issue, Talbert asserts the trial court erred in finding he cannot proceed to trial under the theory of res ipsa loquitur. *See* Appellant's Brief, at 15-21. Talbert argues his claims of negligence are based upon Centurion's "dut[ies] and obligations under State law, DOC policy, and a valid court order[,]" and therefore any juror could understand Centurion's negligence without the need of an expert. *Id.* Talbert asserts, without providing us with any legal authority to support his claims, that Centurion was required to place him "in D roster" and then "file the appropriate paperwork for him to be transferred to a mental health facility." *Id.* Talbert does not provide us with the law or DOC policies upon which he bases this assertion.[2]

We begin by noting the lack of merit in Talbert's argument that he could prosecute his claim of professional negligence without expert testimony. The prothonotary was within its authority to grant the judgment of non pros and the trial court properly denied Talbert's petition to open and/or strike

---

[2] We note that "[a]dministrative regulations or policies do not create rights in inmates." *Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998) (citation omitted). Further, "it is entirely a matter of the Department[ of Corrections'] discretion where to house an inmate." *Clark v. Beard*, 918 A.2d 155, 160 (Pa. Cmwlth. 2007). Even assuming, arguendo, Centurion decided where to house Talbert, Talbert cannot rely on the prison policies for his proposition that Centurion was negligent for not following the prison's policies, as Centurion is neither the Department of Corrections nor its agent.

- 10 -

judgment of non pros because Talbert did not file a valid certificate of merit. **See** Pa.R.C.P. 1042.7. Even if he could proceed without expert testimony, Talbert was required to attach a written statement from a licensed professional to his certificate because the certificate was not signed by an attorney. **See Baez v. Correct Care Solutions, Inc.**, 245 A.3d 1059, 1854 WDA 2019, at *5 (Pa. Super. filed Dec. 11, 2020) (unpublished memorandum) ("the Rule does not allow a pro se party to certify that expert testimony is unnecessary.") (citation and italics omitted);[3] Pa.R.C.P. 1042.3(e) (providing where a certificate of merit is not signed by an attorney, a written statement from an appropriate licensed professional must be attached to the certificate). As Talbert did not comply with Rule 1042.3(e), it does not matter whether he could proceed without an expert. "A pro se litigant is not absolved from complying with procedural rules." **Warner v. University of Pennsylvania Health System**, 874 A.2d 644, 648 (Pa. Super. 2005) (citation omitted). Talbert failed to comply with the procedural rules and the trial court did not err in denying the petition to open and/or strike the judgment of non pros. Therefore, this claim does not entitle Talbert to relief.

Even if we were to ignore Talbert's failure to comply with the procedural rules, this claim would not merit relief as his contentions are not within the province of laypersons, i.e., his averments of mental health conditions and

---

[3] Pursuant to Pa.R.A.P. 126(b), we may rely on unpublished memorandum issued after May 1, 2019, for their persuasive value.

the worsening of symptoms of mental health condition(s). Res ipsa loquitur,

a doctrine that allows a fact-finder to infer negligence from the surrounding

circumstances, requires:

> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>
> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
>
> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

*Fessenden v. Robert Packer Hosp.*, 97 A.3d 1225, 1230 (Pa. Super. 2014)

(quoting the Restatement (Second) of Torts, § 328D(1)) (case citation

omitted).

> Traditionally, res ipsa is associated with events that are within the common knowledge of laypersons and requiring no expert testimony to establish negligence and causation. Some examples of such events offered by the commentators to the Restatement are the fall of an elevator, or the escape of gas, water, or electricity from mains or wires, or train derailments. From the nature of such events, "the conclusion is at least permissible that such things do not usually happen unless someone has been negligent."

*Lageman by and through Lageman v. Zepp*, 237 A.3d 1098, 1105 (Pa.

Super. 2020) (quoting the Restatement (Second) of Torts, § 328D cmt. c)

(case citation omitted).

> As the trial court aptly noted:
>
> [Talbert's] injuries are difficult to ascertain from the amended complaint. [Talbert] asserts that he was not placed in "D Roster" because [Centurion] did not provide him with a psychological evaluation, but it is unclear whether this duty fell to [Centurion] or to the Department of Corrections generally. [Talbert] asserts

that as a result of [Centurion's] failure to evaluate him and "falsifying his mental health records," he was subject to extended periods of solitary confinement (Restricted Housing). Again, however, we cannot ascertain whether it was [Centurion's] failure to act or [Talbert's] own actions that resulted in him being placed in the restricted housing unit. In summation, [Talbert] states that he has suffered anxiety, PTSD, psychosis, paranoia, depression, mood swings, and antisocial and borderline personality disorder symptoms, and that his mental health has deteriorated because of [Centurion's] acts and omissions. It is unclear, though, whether those symptoms are a result of [Centurion's] alleged acts and omissions or whether [Talbert] suffered from those symptoms prior to his incarceration and would continue to suffer from them regardless of [Centurion's] actions. Hence the need for an expert. Additionally, by [Talbert's] own admission, he will need to submit texts on psychology to explain his claims to the jury. Such texts would not be needed under the theory of res ipsa loquitur.

Trial Court Opinion, 11/22/24, at 13-14 (italics and footnotes omitted).

Based upon our reading of the complaint and Talbert's brief, we believe Talbert is arguing his mental health conditions were worsened because he was placed in solitary confinement. We are unable to determine, however, whether Centurion or Department of Corrections staff were responsible for placing Talbert in solitary confinement. Furthermore, even if Centurion was responsible for choosing solitary confinement, the record is unclear as to whether Talbert may have been placed there due to his own actions and not the result of any negligence. Talbert has not alleged sufficient facts to address this concern. Additionally, laypersons would not know the effects of solitary confinement and certainly could not determine without an expert whether those effects would be present in the absence of any negligence. Simply put,

Talbert has not met a single element required for res ipsa loquitur. This claim therefore fails.

Talbert next asserts the trial court was required to advise him what "facts and/or evidence was required of an expert[.]" Appellant's Brief, at 21 (unnecessary capitalization omitted). Talbert does not cite a single authority to support his theory.

We have consistently held:

> the Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant.

*Kalili v. State Farm Fire and Casualty Company*, 330 A.3d 396, 406 (Pa. Super. 2024) (brackets and citation omitted).

Talbert's fourth claim is therefore waived. Even if we were not to find the claim waived, Talbert is not entitled to relief as the trial court did advise him regarding the need for expert testimony. During the hearing on Talbert's petition to open and/or strike judgment of non pros, the trial court explained:

> [Turning to] argument, Mr. Talbert. I [have] your amended complaint in front of me. To me, some of this clearly needs another doctor to say, you weren't treated right, they didn't do this right, they didn't provide — they misdiagnosed. You make several statements that clearly need another doctor or professional to opine on. …
>
> ***

- 14 -

Okay. So when we talk about it, and I'll explain this a little bit. But then I do want to ask you some more questions. So when we talk about something not needing experts, it has to be clear from the writing. Your complaint[;] that you don't need anything else to interpret that. So someone would have to read your complaint and not need the DSM-5-TR, or not need that other book, or not need any other resource to determine whether they had a duty of care, they breached the duty of care, and harm resulted from that. So when you are holding up those books, that is kind of running counter to your position. Because if we need those books to understand what you are talking about, then we need an expert, because those books are written by experts. …

N.T. Hearing, 8/5/24, at 3, 10. As such, Talbert's claim is meritless, as he was instructed by the court that experts are necessary to explain the duty Centurion owed Talbert, the breach of that duty, and the resulting harm.

Talbert's final claim asserts the trial court should have sua sponte given him time to amend his complaint. **See** Appellant's Brief, at 22-23. Talbert's entire argument on this point is one paragraph and he concedes he never requested an opportunity to amend his complaint. **See id.**

We could arguably find this claim waived for failure to develop it. **See Kalili**, 330 A.3d at 406. The trial court, however, aptly addressed this claim:

[Talbert's] fifth error complained of on appeal asserts that this [c]ourt erred in not permitting [Talbert] to amend his complaint. First, [Talbert] did not seek leave to amend his amended complaint. Second, amendment of the complaint would not cure the defect because the nature of his claims would remain the same, and expert testimony would be required regardless.

Trial Court Opinion, 11/22/24, at 14-15 (footnotes omitted).

A party may amend a pleading with either consent of the adverse party or leave of court. **See** Pa.R.C.P. 1033(a). Talbert had neither. Furthermore, it

is indisputable that "[h]aving never sought the remedy, [an a]ppellant may not now complain that the trial court erred in failing to grant it." ***Desanctis v. Pritchard***, 803 A.2d 230, 233 (Pa. Super. 2002).

Because Talbert's claims do not merit relief, we affirm the order of the trial court denying his petition to open and/or strike judgment of non pros.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2025