J-A09028-25

2025 PA Super 256

JOHN M. FEATHER : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KELLY D. FEATHER :
:
Appellant : No. 1054 WDA 2024

Appeal from the Order Entered July 26, 2024
In the Court of Common Pleas of Blair County Civil Division at No(s):
2024 GN 912

BEFORE: KUNSELMAN, J., NICHOLS, J., and LANE, J.

OPINION BY NICHOLS, J.: **FILED: November 13, 2025**

Appellant Kelly D. Feather (Wife) appeals from the order granting declaratory judgment in favor of Appellee John M. Feather (Husband) after concluding that the parties' prenuptial agreement (the Agreement) was enforceable. After careful review, we vacate the order and dismiss Husband's petition for declaratory judgment.

The trial court summarized the factual history in this matter and found as follows:

[T]he following facts are not in dispute[:]

1. The parties hereto were married on August 22, 1992.

2. The Agreement was executed by the parties on or about August 7, 1992 in the office of attorney Harold Miller.

3. The Agreement was entered into evidence as [Husband's] Exhibit #1.

4. At the time the parties executed the Agreement, neither party had met with or discussed the matter directly with Attorney Miller.

5. Attorney Miller represented [Husband's] parents in their various businesses and properties.

6. Neither party owned any substantial assets at the time they executed the Agreement.

7. At the time the parties signed the Agreement, [Wife] was 20 years old . . . [Husband] was 24 [years old].

8. Prior to her execution of the Agreement, [Wife] had worked at Sheetz, Sears[,] and J.C. Penney as a security guard. In 2012, [Wife] earned a nursing degree and became licensed as an LPN.

9. [Husband] worked for the [Pennsylvania State Police] and retired after 24 years of service.

10. The parties separated in February of 2020.

11. A divorce action was filed by Husband on March 1, 2021 [at trial court docket number] 2021 GN 0521.

Trial Ct. Op., 7/26/24, at 2 (unpaginated) (some formatting altered).

The trial court continued:

Both parties testified at the evidentiary hearing. [Husband] testified as follows: The parties resided together for a year prior to the marriage. [Husband] had a high school education and joined the military right out of high school. At the time of the marriage, [Husband] was employed by his father who owned five businesses. Said businesses included: an oil company, several coal companies, a trucking company[,] and a brokerage. [Husband's] father also owned 37 deeded properties at that time. [Husband] has three siblings who also worked for the business at various times. The testimony supports the proposition that [Husband's] father had significant assets.

The decision to get married was made by [Husband] upon finding out [that Wife] was pregnant. [Husband] proposed and [Wife] accepted. [Husband] discussed the impending marriage with his father. [Husband's] father told him that he would not be part of

- 2 -

the business if there was no prenuptial agreement. Additionally, [Husband's] parents told him they would not give their blessing to the marriage.

[Husband] testified to talking to [Wife] about obtaining a prenuptial agreement. The discussion with [Wife] about the Agreement took place after they found out about the pregnancy and made the decision to marry. They were referred to Attorney Harold Miller as he was [Husband's] father's legal counsel. [Husband] testified that he knew what he wanted the Agreement to do. [Husband] stated that he wanted to protect his pension as he was going to start a job with the Pennsylvania State Police (PSP). He ultimately did begin a career with the PSP and retired after 24 years of service.

[Husband] testified that his father did not like [Wife]. [Husband] stated that pleasing his father was important to him. A purpose of the Agreement was to protect [Husband's] father's business assets in the event that an ownership interest was ever given to [Husband]. As it turns out, [Husband] never obtained any ownership interest in his father's businesses.

[Husband] stated that he did not discuss the terms for the Agreement with Attorney Miller in advance of the parties' meeting with him. The parties went to the attorney's office together to sign the Agreement. [Husband] testified that he did not tell [Wife] that she had to sign the Agreement or had to sign it that day. [Husband] had no substantial assets at the time and neither did [Wife].

Both parties were presented with a copy of the Agreement by Attorney Miller who then left them have some time alone to discuss and review the Agreement. Both parties reviewed the document. There was then time to ask questions. [Husband] stated that [Wife] asked about child support and the impact the document had on that. He testified that she also questioned spousal support. He stated that she was hesitant about signing and they talked about it. He stated that she understood that she was waiving spousal support by signing the document.

[Husband and Wife] signed the Agreement that day but [Husband] testified that they did not have to sign that day and were each free to take the Agreement with them for further review. [Husband] testified that there was no tension between them after signing. He testified that he never threatened [Wife] regarding signing the Agreement. He did not discourage her from having

the document reviewed by counsel. [Husband later] inherited family owned properties after the death of his parents.

[Wife] also testified at the hearing. She stated that the parties were together awhile prior to getting married. [Husband] was in the military during that time. He was stationed in Hawaii and [Wife] testified that he flew her out for a two week visit. The relationship was turbulent both prior to the marriage and after. The parties broke up at one point prior to getting married. [Wife] testified to abuse. She testified that she stayed with [Husband] for financial reasons. She believes that she is unable to take care of herself.

The decision to marry was prompted by her pregnancy. [Wife] confirmed that [Husband's] family did not like her. She stated that [Husband] went to his parents to seek their blessing for the marriage and when they would not give it, he said that he would not marry her. She testified that she was scared. She testified that there were no discussions about a prenuptial agreement. She stated that she did not realize that they were going to an attorney's office that day to sign an agreement. [Wife] stated that when they pulled up to the attorney's office[,] she recognized the name as being the attorney for [Husband's] family.

[Wife] claims that she did not understand the documents. She testified that [Husband] told her that he could not marry her if she did not sign. Attorney Miller read portions of the Agreement to them but she stated that she did not understand it. She felt pressured to sign the document. She testified that she did not have an opportunity to have someone else review it. She did not realize that she could do that. She just knew that she had to sign it or he would not marry her. [Wife] stated that she could not take care of herself. She denied that she asked any questions of Attorney Miller about the Agreement. All she knew was that [Husband] would not marry her if she did not sign the Agreement. She stated that she would not be able to take care of the child by herself.

[Wife] testified to having ADHD which resulted in difficulty focusing which is why she stated that she did not do well in school. Much of [Wife's] testimony focused on her more recent struggles with mental health issues and other matters that make life difficult for her post-separation from [Husband]. While the court is sympathetic to [Wife's] situation and the difficulties she has encountered, that testimony is not relevant to the issue for

- 4 -

decision. The court must base the decision on the circumstances that existed at the time the Agreement was executed.

*Id.* at 2-6 (unpaginated) (some formatting altered).

The trial court further found:

1. At the time of the execution of the Agreement, [Wife] had little to no understanding of pre-nuptial agreements.

2. [Wife] was financially dependent on [Husband].

3. [Wife] believed that she would be unable to care for the unborn child without financial assistance from [Husband].

4. The Agreement was initiated with the assistance of [Husband's] father who had an interest in protecting his assets.

5. Neither party had the benefit of counsel, other than Attorney Miller, in reviewing the Agreement prior to signing it.

6. There is no evidence of threats of bodily harm or abuse directed toward [Wife] by [Husband] in order to force her to sign.

7. Neither party was prevented from seeking advice from another attorney.

8. Neither party was forced to sign the Agreement.

9. There is no evidence that [Wife] was coerced into signing the agreement.

10. There is no evidence to suggest that either party lacked capacity to enter into a contract.

11. [Wife] believed that a failure to sign the Agreement may have resulted in the cancellation of the wedding.

12. The court finds the [Husband's] testimony as to questions asked by [Wife] to Attorney Miller about the Agreement to be credible.

13. The court does not find the testimony of the [Wife] that there was no discussion about the Agreement prior to going to the attorney's office to be credible.

14. The Agreement is clear and unambiguous.

*Id.* at 7-8 (unpaginated) (some formatting altered).

The trial court subsequently provided its conclusions of law:

1. [Wife] failed to meet the burden of proof necessary to establish duress.

2. [Wife] did not present sufficient evidence of weakness or infirmity at the time the Agreement was signed.

3. Both parties possessed ordinary firmness at the time the document was signed.

4. The Agreement is valid and enforceable.

*Id.* at 11 (unpaginated) (some formatting altered).

In the order filed on July 26, 2024, the trial court found that the Agreement was valid and enforceable and granted Husband's petition for declaratory judgment. Wife filed a timely appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Wife raises the following issues:

1. Did the trial court err as a matter of law by upholding the validity of the . . . [A]greement . . . when Wife had no opportunity to consult with counsel prior to executing the agreement?

2. Did the trial court have subject matter jurisdiction to determine the validity of the . . . [A]greement . . . through the declaratory judgment action filed by Husband?

Appellant's Brief at 4 (some formatting altered).

We first address the trial court's jurisdiction in this matter as it is dispositive. *See Turner v. Estate of Baird*, 270 A.3d 556, 560 (Pa. Super. 2022).

> Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Issues of subject matter jurisdiction cannot be waived. The want of jurisdiction over the subject matter may be questioned at any time. It may be questioned either in the trial court, before or after judgment, or for the first time in an appellate court, and it is fatal at any stage of the proceedings, even when collaterally involved. Moreover, it is well settled that a judgment or decree rendered by a court which lacks jurisdiction of the subject matter or of the person is null and void. Subject matter jurisdiction raises a question of law for which our standard of review is *de novo* and our scope of review is plenary.

*Id.* (some formatting altered and citations omitted). "Jurisdiction will never be assumed unless the tribunal . . . is satisfied that an actual controversy, or the ripening seeds of one, exists between parties all of whom are *sui juris* and before the court, and that the declaration sought will be a practical help in ending the controversy."[1] *Page Publ'g, Inc. v. Hemmerich*, 287 A.3d 948, 956 (Pa. Super. 2022) (some formatting altered and citation omitted). Subject matter jurisdiction and the trial court's power under the Declaratory Judgments Act are one and the same. *See id.*

_____

[1] "*Sui juris*, as defined in Black's Law Dictionary, means "of one's own right; independent; [o]f full age and capacity[;] [p]ossessing full social and civil rights." Black's Law Dictionary (12th ed. 2024). *See also Gavin v. Loeffelbein*, 205 A.3d 1209, 1216 n.10 (Pa. 2019).

As noted, Husband filed a declaratory judgment action concerning the enforceability of a prenuptial agreement. *See* Trial Ct. Order, 7/26/24. Section 7533 of the Declaratory Judgments Act provides as follows:

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S. § 7533. However, the Act specifically precludes declaratory relief where a divorce or annulment is sought.

**(c) Exceptions.**—Relief shall not be available under this subchapter with respect to any:

(1) Action wherein a divorce or annulment of marriage is sought except as provided by 23 Pa.C.S. § 3306 (relating to proceedings to determine marital status).

42 Pa.C.S. § 7541(c)(1).[2]

---

[2] Section 3306 provides as follows:

When the validity of a marriage is denied or doubted, either or both of the parties to the marriage may bring an action for a declaratory judgment seeking a declaration of the validity or invalidity of the marriage and, upon proof of the validity or invalidity of the marriage, the marriage shall be declared valid or invalid by decree of the court and, unless reversed upon appeal, the declaration shall be conclusive upon all persons concerned.

23 Pa.C.S. § 3306.

Husband initiated an action in divorce on March 1, 2021 at trial court docket number 2021 GN 0521, and he subsequently filed a petition for declaratory relief in the instant case at trial court docket number 2024 GN 912. *See* Trial Ct. Op. 7/26/24 at 2 (unpaginated); Trial Ct. Order, 7/26/24. Husband's declaratory judgment action concerns the enforceability of a prenuptial agreement and does not involve a proceeding to determine the validity of a marriage pursuant to 23 Pa.C.S. § 3306. *See id.* Therefore, Husband's declaratory judgment action is specifically precluded by Section 7541(c)(1), and the trial court lacked jurisdiction to grant or deny relief as no relief is available under the Declaratory Judgments Act. *See* 42 Pa.C.S. § 7541(c)(1); *Page Publ'g, Inc.*, 287 A.3d at 956; *Chrin v. Chrin*, 42 Pa. D. & C.3d 229, 232, 1985 WL 5929, at *2 (C.C.P. Northampton 1985) (explaining that Section 7541(c)(1) of the Declaratory Judgments Act precludes a declaratory judgment action when a divorce is sought in a separate action);[3] *see also Fried v. Fried*, 501 A.2d 211, 215 (Pa. 1985) (issues in divorce are reviewable only after entry of divorce decree and resolution of all economic issues). Accordingly, because a divorce action was pending and Husband's complaint for declaratory judgment did not relate to the parties' marital status, the trial court lacked jurisdiction in this matter, and we are constrained

_____

[3] "[D]ecisions of the Courts of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority." *Wilson v. Parker*, 227 A.3d 343, 356 (Pa. Super. 2020) (some formatting altered and citation omitted).

- 9 -

to vacate the trial court's order as a nullity and dismiss Husband's petition for declaratory judgment. ***See Turner***, 270 A.3d at 560; ***see also*** 42 Pa.C.S. § 7541(c)(1); ***Page Publ'g, Inc.***, 287 A.3d at 956; ***Chrin***, 1985 WL 5929, at *2.[4], [5]

Order vacated. Petition for declaratory judgment dismissed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

11/13/2025

---

[4] We note that a party may seek declaratory relief as part of the divorce action as in ***Kensey v. Kensey***, 877 A.2d 1284 (Pa. Super. 2005). However, a party in a divorce proceeding cannot file a separate action seeking declaratory relief, as Husband did here.

[5] Our decision is without prejudice to either party's ability to properly raise issues in the pending divorce action, and/or seek appellate review after the entry of a divorce decree and the resolution of all economic issues. ***See Fried***, 501 A.2d at 215.